UNITED STATES of America ex rel. Conrad A. DANCY, Appellee,

v.

Floyd E. ARNOLD, Warden United States Penitentiary Lewisburg, Pennsylvania, et al., Appellants.

No. 77–1394.

United States Court of Appeals, Third Circuit.

Argued Dec. 1, 1977.

Decided Feb. 21, 1978.

Benjamin R. Civiletti, Asst. Atty. Gen., George W. Calhoun, Patrick J. Glynn, Attys., Dept. of Justice, Washington, D. C., for appellants.

Edmund J. Scacchitti, Jordan & Mullaney, Scranton, Pa., for appellee.

Before GIBBONS, VAN DUSEN, Circuit Judges, and GERRY,* District Judge.

## OPINION OF THE COURT

GERRY, District Judge.

This appeal is from the grant of an application by Conrad A. Dancy, an inmate at the United States Penitentiary at Lewisburg, Pennsylvania, for a writ of habeas corpus. The sole issue presented is whether a youth offender, sentenced under the Federal Youth Corrections Act (YCA), 18 U.S.C. § 5005 et seq., to the custody of the Attorney General for treatment and supervision, may be confined in the general population of a federal penitentiary. The district court found that the YCA requires that youths sentenced under it be segregated from adult prisoners and granted the requested relief. The government appeals. We affirm.

I.

Petitioner, Conrad A. Dancy, was convicted in the District of Columbia of first degree felony murder and carrying a pistol without a license.[1] Because Dancy was under 22 years of age, the trial court committed him to the Lorton Youth Center for 60 days for study and evaluation pursuant to 18 U.S.C. § 5010(e), to determine if he would benefit from a YCA sentence. The resulting report, while finding that Dancy was not totally devoid of rehabilitative potential, recommended that he be denied YCA treatment and given an adult sentence. United States v. Dancy, 166 U.S. App.D.C. 399, 401, 406, 510 F.2d 779, 781, 786 (1975). Relying on this recommendation, the trial judge sentenced petitioner to an adult term of imprisonment of twenty years to life.[2] In passing sentence the judge commented that because of Dancy's criminal sophistication, his prior record, and the recommendation of the Youth Center, he had "no alternative under the statute" than to impose an adult sentence. Id. 166 U.S.App.D.C. at 404, 510 F.2d at 784, 790–91. On appeal, this comment led the D.C. Circuit to find that the "trial judge evidently believed that the statute barred him from sentencing Dancy to a youth term against the recommendation of the Youth Center officials." Id. 166 U.S.App.D.C. at 405, 510 F.2d at 785. This reading of the

---

* Honorable John F. Gerry, United States District Judge for the District of New Jersey, sitting by designation.

1. Dancy was also convicted of second degree murder and attempted armed robbery, but these convictions were vacated on appeal. United States v. Dancy, 166 U.S.App.D.C. 399, 401, 510 F.2d 779, 781 n. 6 (1975). The criminal event underlying these convictions was a homicide committed during a robbery attempt. Id. 166 U.S.App.D.C. at 401, 506 F.2d at 781 n. 3.

2. This sentence was the mandatory minimum sentence under the District of Columbia Code. 22 D.C.Code § 2404; United States v. Dancy, 166 U.S.App.D.C. at 406, 510 F.2d at 786.

statute, the court found, was erroneous and surrendered the court's sentencing discretion to the Youth Center authorities. The case was remanded to the district court for resentencing. On remand the district judge imposed a YCA sentence of twenty years under 18 U.S.C. § 5010(c).

After resentencing, petitioner was transferred from the Lorton Youth Center, where he had been confined for four years, to the federal reformatory at Petersburg, Virginia. Authorities there determined, based on his past record and the seriousness of his offense, that he was not properly classified for Petersburg, and he was placed in administrative detention pending transfer to a more appropriate institution. While in administrative detention, Dancy received two misconduct reports, one for encouraging others to riot, and was disciplined. He also experienced "adjustment problems." There is no evidence that he was a disciplinary or adjustment problem while he was confined at Lorton.

Dancy requested transfer back to Lorton so he could take advantage of its educational programs. Instead he was transferred to the United States Penitentiary at Lewisburg, Pennsylvania. Lewisburg is a medium security federal penitentiary designed for adults who require close supervision. It has no separate housing or treatment facilities for YCA inmates. Dancy was placed in the general population at Lewisburg, and the government does not contend that he received any rehabilitative treatment different from that available to adult prisoners or that such treatment is available at Lewisburg.

## II.

■ Dancy is confined pursuant to § 5011 of the YCA, which provides:

Committed youth offenders not conditionally released shall undergo treatment in institutions of maximum security, medium security, or minimum security types, including training schools, hospitals, farms, forestry and other camps, and other agencies that will provide the essential varieties of treatment. The Director shall from time to time designate, set aside, and adapt institutions and agencies under the control of the Department of Justice for treatment. Insofar as practical, such institutions and agencies shall be used only for treatment of committed youth offenders, and such youth offenders shall be segregated from other offenders, and classes of committed youth offenders shall be segregated according to their needs for treatment. 18 U.S.C. § 5011. He maintains that, under this section, committed youth offenders must be segregated from other offenders at all times, and that confining him among adult prisoners in a federal penitentiary is contrary to the terms of his sentence. The government, however, argues that YCA inmates need only be segregated from other offenders "insofar as practical," and that the Attorney General is authorized by 18 U.S.C. § 4082[3] to designate the place of confinement of all federal prisoners. We believe that petitioner's construction of this section is correct. As we read § 5011, it provides that committed youth offenders are to receive treatment at institutions of the types specified, and that, insofar as practical, these institutions should be used only for that purpose. In any event, however, youths committed under the YCA must be segregated from other offenders even if it is impractical to place them in institutions used solely for the treatment of youth offenders. Segregation of youth offenders from adult prisoners is, we believe, mandated by the YCA.

3. 18 U.S.C. § 4082 reads in pertinent part:

(a) A person convicted of an offense against the United States shall be committed, for such term of imprisonment as the court may direct, to the custody of the Attorney General of the United States, who shall designate the place of confinement where the sentence shall be served.

(b) The Attorney General may designate as a place of confinement any available, suitable, and appropriate institution or facility . . . and may at any time transfer a person from one place of confinement to another.

Because the language of the statute is capable of more than one interpretation, *cf. United States v. Alsbrook,* 336 F.Supp. 973, 977 n. 9 (D.D.C.1971), we must examine the statutory scheme as a whole, its purpose and its history. This review has convinced us that our interpretation of § 5011 is correct and that Congress intended the segregation of youth offenders from adult criminals as an integral part of the statutory scheme.

### III.

■ The Supreme Court has called the YCA the "most comprehensive federal statute concerned with sentencing." *Dorszynski v. United States,* 418 U.S. 424, 432, 94 S.Ct. 3042, 3047, 41 L.Ed.2d 855 (1974). It was enacted in 1950, and designed to provide a better method of treating young people convicted in federal court than conventional sentencing. The Act's goal is the rehabilitation of youth offenders.[4] *Id.* at 432–34, 94 S.Ct. 3042. To this end, the sentencing judge is provided a wide variety of sentencing options to ensure that youth offenders receive treatment commensurate with their individual needs for correction and rehabilitation and society's need for protection from anti-social youths. Thus, the court may place a youth offender on probation, 18 U.S.C. § 5010(a); it may, in lieu of a penalty of imprisonment otherwise provided by law, sentence him to the custody of the Attorney General for treatment and supervision for not more than four years, with an additional period of probation, 18 U.S.C. §§ 5010(b), 5017(c); or it may commit the youth offender for treatment and supervision for any period authorized by law for the particular offense, 18 U.S.C. §§ 5010(c), 5017(d). Finally, if the court explicitly finds that a youth offender will not derive benefit from treatment, it may sentence him as an adult, 18 U.S.C. § 5010(d); *Dorszynski v. United States, supra.* To aid the court in choosing the correct sentencing alternative, the Act provides that a convicted youth may be committed for sixty days for observation and study prior to the imposition of sentence. 18 U.S.C. § 5010(e). The decision whether a youth convicted of a crime should be accorded YCA treatment or sentenced as an adult is placed ultimately in the hands of the sentencing judge.[5] *Dorszynski v. United States, supra; United States v. Dancy, supra.*

A unique feature of the YCA is that a youth offender may in some circumstances be sentenced to a longer term of confine-

---

**4.** A youth offender is defined as one who is under 22 years of age at the time of conviction. 18 U.S.C. § 5006(e).

**5.** The sentencing options of the YCA are contained in 18 U.S.C. § 5010, which reads in full
   (a) If the court is of the opinion that the youth offender does not need commitment, it may suspend the imposition or execution of sentence and place the youth offender on probation.
   (b) If the court shall find that a convicted person is a youth offender, and the offense is punishable by imprisonment under applicable provisions of law other than this subsection, the court may, in lieu of the penalty of imprisonment otherwise provided by law, sentence the youth offender to the custody of the Attorney General for treatment and supervision pursuant to this chapter until discharged by the Division as provided in section 5017(c) of this chapter; or
   (c) If the court shall find that the youth offender may not be able to derive maximum benefit from treatment by the Division prior to the expiration of six years from the date of conviction it may, in lieu of the penalty of imprisonment otherwise provided by law, sentence the youth offender to the custody of the Attorney General for treatment and supervision pursuant to this chapter for any further period that may be authorized by law for the offense or offenses of which he stands convicted or until discharged by the Division as provided in section 5017(d) of this chapter.
   (d) If the court shall find the youth offender will not derive benefit from treatment under subsection (b) or (c), then the court may sentence the youth offender under any other applicable penalty provision.
   (e) If the court desires additional information as to whether a youth offender will derive benefit from treatment under subsections (b) or (c) it may order that he be committed to the custody of the Attorney General for observation and study at an appropriate classification center or agency. Within sixty days from the date of the order, or such additional period as the court may grant, the Division shall report to the court its findings.

ment than could an adult convicted of the same offense. This has prompted constitutional challenges to the YCA which the courts have uniformly rejected. One court reasoned that:

> the basic theory of the Act is rehabilitative and in a sense this rehabilitation may be regarded as comprising the *quid pro quo* for a longer confinement but under different conditions and terms than a defendant would undergo in an ordinary prison. *Carter v. United States,* 113 U.S. App.D.C. 123, 125, 306 F.2d 283, 285 (1962) (opinion of Chief Justice Burger).

Another court found that the YCA's provision for longer confinement of youth offenders than adults imposed:

> not heavier penalties and punishment than are imposed upon adult offenders, but the opportunity to escape from the physical and psychological shocks and traumas attendant upon serving an ordinary penal sentence while obtaining the benefits of corrective treatment, looking to rehabilitation and social redemption and restoration. *Cunningham v. United States,* 256 F.2d 467, 472 (5th Cir. 1958).

This circuit has followed these cases in *Brisco v. United States,* 368 F.2d 214, 215 (3d Cir. 1966), and permitted youths to receive YCA sentences longer than they would be subject to if they were adults. *See also Rogers v. United States,* 326 F.2d 56 (10th Cir. 1963); *Standley v. United States,* 318 F.2d 700 (9th Cir. 1963), *cert. denied,* 376 U.S. 917, 84 S.Ct. 673, 11 L.Ed.2d 613 (1964).

Of course, petitioner Dancy was not sentenced to a term longer than an adult could receive. This feature of the YCA is nevertheless relevant to this appeal because if a youth offender serving a YCA sentence is subject to exactly the same conditions of confinement as an adult prisoner, the *quid pro quo* rationale is undermined and the constitutionality of the Act called into question. *See United States ex rel. Sero v. Preiser,* 506 F.2d 1115 (2d Cir. 1974), *cert. denied,* 421 U.S. 921, 95 S.Ct. 1587, 43 L.Ed.2d 789 (1975). We bear this in mind when considering the issue raised by this appeal.

Few courts have considered the issue raised here, and those that have have disagreed. In *Harvin v. United States,* 144 U.S.App.D.C. 199, 445 F.2d 675, *cert. denied,* 404 U.S. 943, 92 S.Ct. 292, 30 L.Ed.2d 257 (1971), the D.C. Circuit ruled that under the YCA a youth offender could not be confined in a penitentiary. In that case, a youth offender, convicted of a misdemeanor, contended that he could not be sentenced under § 5010(b) to more than one year of confinement because he was not tried on an indictment. The court rejected this argument, holding that a misdemeanor did not rise to an "infamous crime" because of the sentencing options provided by the YCA. In so doing, it held:

> We construe the provisions of the Youth Corrections Act to limit the place in which a sentence under it may be served to an institution where the confinement is consistent with the purposes of the Act to afford treatment and rehabilitation. . . . It follows that in no event may it be in a penitentiary. *Id.* 144 U.S.App. D.C. at 205, 445 F.2d at 681–82.

This construction of the YCA has not been limited to youth offenders convicted of misdemeanors; the court said that even youth offenders convicted of felonies are also not subject to "imprisonment in a penitentiary where [they] would be subject to the influence of hardened adult offenders." *United States v. Howard,* 146 U.S.App.D.C. 10, 16, 449 F.2d 1086, 1092 (1971).

Other courts have disagreed. In *Abernathy v. United States,* 418 F.2d 288, 289 (5th Cir. 1969), the Fifth Circuit found that it was not improper to confine a youth offender in a maximum security federal penitentiary. The court reasoned that 18 U.S.C. § 4082 authorized the Attorney General to designate a federal prisoner's place of confinement and that this authority extended to assigning a YCA inmate to a penitentiary. Several district courts have reached the same result. *Barr v. United States,* 415 F.Supp. 990 (W.D.Okl.1976); *Foote v. United States,* 306 F.Supp. 627 (D.Nev.1969); *United States v. Reef,* 268 F.Supp. 1015 (D.Colo.1967); *Coats v. Mark-*

*ley,* 200 F.Supp. 686 (S.D.Ind.1962). We are not persuaded by these cases. We note first that none of them make reference to the scope and purpose of the YCA sentencing scheme and whether confinement of youth offenders in penitentiaries is consistent with the Act's rehabilitative goals. Nor is reference made to the legislative history of the Act or the congressional intent behind it.[6] We agree with the *Harvin* court that youth offenders cannot, consistent with the Act's rehabilitative purposes, be placed among adult prisoners in a penitentiary. That the Act was designed to spare youth offenders the corruptive influence of prison life and association with adult criminals is made clear by its legislative history.

The origin of the YCA is a 1942 report on punishment for crime by the Judicial Conference which recommended

> for offenders under 24 years of age the establishment of a special system, more flexible than the present penal system, giving opportunity for the training of offenders for useful life through the learning of trades and experience of living with their fellows under supervision and under more wholesome conditions than are possible in the usual prisons. The courts will have an option . . . to commit youthful offenders to such a system, in lieu of conventional imprisonment.[7]

The system envisioned by the Conference was to be based upon the Borstal System which had been successful in Great Britain. It proposed an act which would create a Youth Authority to administer this special system. This Authority would be:

> required to classify youthful offenders committed to it, to provide varying degrees of security in accordance with their needs, to provide separation of youthful from adult offenders, and to provide for

the proper separation of youthful offenders.[8]

Plainly the Judicial Conference envisioned a system in which youth offenders would, without exception, be separated from adult prisoners. And it intended that youths committed to this system should not be placed in the "usual prisons," such as the federal penitentiary at Lewisburg.

Congress substantially adapted the recommendations of the Judicial Conference when it passed the YCA in 1950. Like the Judicial Conference, Congress intended to create a system for handling youthful offenders patterned on the Borstal System. Its understanding of the Borstal System was that each of the thirteen Borstal institutions was used only for the confinement of youths and that youthful offenders in Borstal were separated from the corruptive influence of adult criminals. H.R.Rpt.No. 2979, 1950 U.S.Code Cong.Serv. pp. 3983, 3987–88 (1950); Sen.Rpt.No.1180 at 4 (1949). Thus, when Congress passed the final bill, it provided that "insofar as practical" the YCA should follow the Borstal pattern and provide institutions solely for the treatment of youth offenders. It went on to provide for the segregation of youth offenders from adults and for segregation among youth offenders. The House Report makes clear Congress' understanding of this provision of § 5011.

> The Director is required to designate, set aside, and adapt institutions and agencies under the control of the Department of Justice for treatment. Such institutions are to be used only for the treatment of youth offenders, so far as practicable; and youth offenders are to be segregated from other offenders, and the classes of offenders are to be segregated according to their needs for treatment. H.R.Rpt.

---

6. We note also that all but one of the cases permitting the confinement of youth offenders in penitentiaries was decided on the application of a federal prisoner acting *pro se,* and thus without the benefit of full argument by competent counsel. The sole exception is *United States v. Reef,* 268 F.Supp. 1015, 1017 (D.Colo. 1967), which does not squarely raise the issue presented here, but only mentions it in passing.

7. *Report to the Judicial Conference of the Committee on Punishment for Crime* (1942), at 1–2. See *Dorszynski v. United States, supra,* 418 U.S. at 432 & n. 8, 94 S.Ct. 3042.

8. *Report to the Judicial Conference, supra,* at 9.

No.2979, 1950 U.S.Code & Cong.Serv. at p. 3986 (1950).

Plainly Congress intended that the segregation of committed youth offenders from adult offenders was to be mandatory; the phrase "insofar as practical" was intended to refer only to the provision that institutions for the treatment of youth offenders should be used solely for that purpose. The congressional scheme was that youth offenders were at all times to be confined away from the corruptive influence of adult criminals. Placing a youth offender in the general population of a federal penitentiary is contrary to this scheme.[9]

█ The government disagrees with this interpretation. The Bureau of Prisons construes the YCA to require segregation of youth offenders from adult prisoners only insofar as segregation is practical and assigns them to adult institutions when it believes it appropriate.[10] The government argues that this interpretation is entitled to "great weight."[11] We disagree. Courts need not defer to the administrative interpretation of a statute where, as here, that interpretation is inconsistent with the obvious congressional intent. *Espinoza v. Farah Mfg. Co.,* 414 U.S. 86, 94–95, 94 S.Ct. 334, 38 L.Ed.2d 287 (1973); *United States v. Cartwright,* 411 U.S. 546, 550, 93 S.Ct. 1713, 36 L.Ed.2d 528 (1973). This court is not bound to accept an administrative construction of a statute which is at odds with a congressional intent and statutory policy which has been plainly expressed; we find compelling indications that the Bureau's interpretation is wrong.

The government also relies upon a line of cases holding that a juvenile committed to the custody of the Attorney General under the Federal Juvenile Delinquency Act, 18 U.S.C. § 5031 *et seq.,* may be confined in a penitentiary. *Sonnenberg v. Markley,* 289 F.2d 126 (7th Cir. 1961); *Arkadiele v. Markley,* 186 F.Supp. 586 (S.D.Ind.1960); *United States v. McCoy,* 150 F.Supp. 237, 239 (M.D. Pa.1957). It would be anomalous, it contends, for juveniles to be subject to confinement in a penitentiary when older youths were not. This argument is unconvincing.

**9.** Unlike the *Harvin* court, we are not convinced that a youth offender could never be placed in a penitentiary. Maximum security confinement of youth offenders is specifically authorized by the YCA. 18 U.S.C. § 5011. A youth offender may not be placed, as petitioner has, in the general adult population of a federal penitentiary. But this would not prevent the establishment of a youth offender facility within the walls of a penitentiary if it otherwise complied with the treatment and segregation requirements of the YCA.

**10.** *Bureau of Prisons Policy Statement No. 7300.13(e),* Subject: Delegation of Transfer Authority (June 16, 1975). Counsel for the government informs us that there are currently 13 youth offenders serving YCA sentences at Lewisburg and a total of 40 YCA inmates confined in the five other federal penitentiaries. The government suggested at oral argument that if Dancy could not be placed in a penitentiary among adult offenders, that his presence among other youth offenders might subject them to just the kind of corruptive influence from which the YCA should protect them. Congress was aware of this problem and provided for it; § 5011 provides that "classes of committed youth offenders shall be segregated according to their needs for treatment." It is the Bureau of Prison's responsibility to see that impressionable youths are not confined with criminally sophisticated ones. We are confident that the Bureau can implement this statutory mandate so as to provide all youth offenders with appropriate treatment.

**11.** This principle has long been recognized by the courts. *See e. g., Griggs v. Duke Power Co.,* 401 U.S. 424, 434, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971); *Zuber v. Allen,* 396 U.S. 168, 193, 90 S.Ct. 314, 24 L.Ed.2d 345 (1969); *Red Lion Broadcasting Co. v. FCC,* 395 U.S. 367, 381, 89 S.Ct. 1794, 23 L.Ed.2d 371 (1969). The best statement of the principle remains that in the seminal case of *Skidmore v. Swift & Co.,* 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944):

We consider that the rulings, interpretations, and opinions of the Administrator under this Act, while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance. The weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control. *See also* Davis, *Administrative Law of the Seventies,* § 5.05 (1976).

The Juvenile Delinquency Act was amended in 1974 [12] and now provides that juveniles may not be confined in adult jails and institutions in which they may have regular contact with adult criminals. 18 U.S.C. § 5039. The cases on which the government relies were decided under the old Act which, unlike the YCA, contained no provision for the segregation of juvenile delinquents from adult criminals. The 1974 amendment demonstrates Congress' continuing concern for the protection of incarcerated young people from the corruptive influence of adult offenders. The government's reliance on this analogy to the Juvenile Delinquency Act is misplaced, and in fact undermines its position. The two Acts are entirely consistent and express the same policy, the rehabilitation of young people who commit crimes and the protection of these young people from association with mature criminals.

Moreover, the Juvenile Delinquency Act provides that a juvenile commitment may not exceed the term of imprisonment for which an adult would be liable. 18 U.S.C. § 5034. In the case of juveniles, then, there is no possibility of a longer sentence and thus there need not be a *quid pro quo* of special treatment. *See Carter v. United States, supra,* 113 U.S.App.D.C. at 125, 306 F.2d at 285.

### IV.

■ Petitioner Dancy's confinement at Lewisburg did not comply with the requirements of § 5011. The Attorney General's authority under 18 U.S.C. § 4082 to designate the place of confinement of federal prisoners is limited in this case by the terms of the YCA; he has no discretion to confine a youth offender contrary to the terms of his sentence. This court has said that if a youth offender does not receive the treatment required by § 5011 "and if the circumstances of [his] confinement are no different than those of adult offenders, then we have no doubt that some kind of relief is appropriate." *United States v. Lowery,* 484 F.2d 457, 458 (3d Cir. 1973) (per curiam).

Habeas corpus is an appropriate form of relief. *See Harvin v. United States, supra,* 144 U.S.App.D.C. at 206, 445 F.2d at 682. We therefore affirm the district court's grant of the writ.

We note, however, that the district judge ordered Dancy returned to the federal reformatory at Petersburg, Virginia. We have no doubt that 18 U.S.C. § 4082 gives discretion to the Attorney General to place a youth offender in any institution where he will receive treatment consistent with § 5011 and this opinion. We therefore vacate that portion of the order which requires that petitioner be confined in any particular institution.

12. P.L. 93–415, § 509, 88 Stat. 1109, 1138 (1974).