**Don Curtis OUTING, Appellant,**

v.

**Griffin BELL, Individually and in his official capacity as Attorney General of the United States of America; Norman A. Carlson, Individually and in his official capacity as Director of the Federal Bureau of Prisons; Bureau of Prisons, as the governing body of the Federal Prison System, Appellees.**

**No. 79–6192.**

United States Court of Appeals, Fourth Circuit.

Argued Jan. 9, 1980.

Decided Oct. 7, 1980.

Marsha Dalton, Huntington, W.Va., for appellant.

Raymond A. Carpenter, Asst. U. S. Atty., Richmond, Va. (Justin W. Williams, U. S. Atty., Brenda D. Crocker, Third Year Law Student, Alexandria, Va., on brief), for appellees.

Before WIDENER, HALL and MURNA-GHAN, Circuit Judges.

WIDENER, Circuit Judge:

Appellant, Don Curtis Outing, was convicted in August 1976 of armed robbery in the Western District of North Carolina and sentenced to twelve years' confinement under the Youth Corrections Act, 18 U.S.C. § 5005 et seq. (YCA or Act). Following that conviction, Outing was confined in the Federal Correctional Institution at Petersburg, Virginia. There, he was not segregated from adult offenders. In May 1977, he was convicted of assault with the intent to inflict bodily harm following an assault upon a fellow inmate at Petersburg. He was then sentenced to five years of confinement as an adult, to run consecutively to his YCA sentence. Outing is presently incarcerated in the Federal Correctional Institution at Ashland, Kentucky in the regular adult population.

Outing alleges that he was improperly confined at Petersburg with adult offenders in violation of 18 U.S.C. § 5011, which provides:

Committed youth offenders not conditionally released shall undergo treatment in institutions of maximum security, medium security or minimum security types, including training schools, hospitals, farms, forestry and other camps, and other agencies that will provide the essential varieties of treatment. The Director shall from time to time designate, set aside, and adapt institutions and agencies under the control of the Department of Justice for treatment. Insofar as practical, such institutions and agencies shall be used only for treatment of committed youth offenders, and such youth offenders shall be segregated from other offenders, and classes of committed youth offenders shall be segregated according to their needs for treatment.

The Youth Corrections Act was passed by Congress in 1950 to promote the rehabilitation of youthful offenders so that they could become productive members of society. Through the YCA, Congress sought to prevent such youths from being adversely influenced by hardened criminals within the prison system. 1950 U.S.Code Cong. Service, pp. 3983–93.

We note initially that mandatory segregation of a YCA inmate is not re-

quired by the wording of the statute.[1] The YCA simply provides for segregation "insofar as practical." Nothing in this record suggests a reason that we should go beyond the literal language of the Act to find a violation of the statute by Outing's confinement at Petersburg prior to the conviction on the assault charge. That segregated confinement was practical is simply not shown by the plaintiff.[2]

■ We are told at oral argument that because facilities are now available (apparently they were not at the time of the first conviction), YCA inmates are presently in fact being segregated from adult offenders. Outing claims he must be so segregated during his present confinement, at least until the conclusion of his initial term of confinement imposed on account of the bank robbery, and by implication for the duration of his confinement because he claims if he had been segregated initially he would not have committed the assault.

Because there was no mandatory requirement to segregate Outing, his last contention is without merit, and under prison regulations Outing cannot presently be so segregated. He is no longer simply a YCA inmate, for he has both youth and adult sentences to serve. Policy statement 7300.-136 of the National Bureau of Prisons defines a YCA inmate as one sentenced under the YCA "who is not also sentenced to a concurrent or consecutive adult term, whether state or federal." Since Outing has an adult sentence imposed for the assault which runs consecutively to his youth sentence, he does not fall within the definition of a YCA inmate under policy statement 7300.136 and therefore cannot be segregated.

He argues that the definition of a YCA inmate under statement 7300.136 is not authorized by the statute and that he retains his YCA status although he has been convicted of another crime and sentenced as an adult.

We think the construction of the statute which Outing asks us to adopt is contrary to the purposes of the Act. As noted, the Act was passed to promote the rehabilitation of youthful offenders. We do not think the mandatory confinement of an adult offender such as Outing with other youthful offenders is consistent with the intent of Congress. Just because Outing had a previous YCA sentence does not make him any the less an adult offender.[3] Outing's confinement with YCA inmates, themselves free of adult convictions, would be inconsistent, we think, with the intent of the statute to keep such inmates who are free of adult convictions segregated "insofar as practical."

We are of opinion that policy statement 7300.136, in the language of the district court, "enhances the objectives of the Act and is clearly conforming to the language of the statute."

Accordingly, the order of the district court granting summary judgment for the defendants is

*AFFIRMED.*

K. K. HALL, Circuit Judge, dissenting:

I cannot concur in the result reached by the majority which permits the Federal Prison System to modify the statutory mandate of Congress in order to ease the long overdue implementation of the Youth Corrections Act (YCA), 18 U.S.C. § 5001 *et seq.* Not only has the prison system taken nearly 30 years to comply with the YCA, but it also has attempted to further restrict the

---

1. See also *Dorszynski v. United States*, 418 U.S. 424, 435, 94 S.Ct. 3042, 3048, 41 L.Ed.2d 855 (1974), where the Court stated that "[a]n integral part of the treatment program was the segregation of the committed persons, *insofar as practicable*, so as to place them with those similarly committed, to avoid the influence of association with the more hardened inmates serving traditional criminal sentences." (Italics added.)

2. *Abernathy v. United States*, 418 F.2d 288 (5th Cir. 1969), is generally in accord with our holding, and *United States ex rel. Dancy v. Arnold*, 572 F.2d 107 (3d Cir. 1978), does not agree.

3. *Roddy v. United States*, 509 F.2d 1145 (10th Cir. 1975); *Nast v. United States*, 415 F.2d 338 (9th Cir. 1969).

program by eliminating certain categories of persons sentenced under the Act.

The majority cites *Dorszynski v. United States*, 418 U.S. 424, 94 S.Ct. 3042, 41 L.Ed.2d 855 (1974), for the proposition that "mandatory segregation of a YCA inmate is not required by the wording of the statute." Majority at 1145. In effect, the majority construes the phrase "insofar as practical" in § 5011 to allow prison administrators unfettered discretion in the placement and segregation of youth offenders. Moreover, the burden of proving that segregated confinement and treatment was practical is inexplicably placed upon the youth offender.

I disagree with this approach for several reasons. First, the majority relies on a one–sentence summary of § 5011 contained in dicta in the *Dorszynski* opinion to justify the unequivocal statement that mandatory segregation of youth offenders is not required under the Act. The actual inquiry by the Supreme Court was the manner by which district courts must determine whether an individual should be sentenced under the alternative provisions of the Act. Thus, *Dorszynski* did not deal with the treatment of persons already validly sentenced as youth offenders.

Those decisions of federal courts actually addressing the issue of segregation of committed youth offenders are not in agreement.[1] Few decisions have interpreted the scope of application of the phrase "insofar as practical." In *Brown v. Carlson*, 431 F.Supp. 755 (W.D.Wis.1977), the district court examined the legislative history and after a thorough analysis under the rules of statutory construction concluded that "§ 5011 plainly requires that institutions and agencies be designated, set aside, adapted, and used only for the treatment of YCA offenders, and that YCA offenders be segregated from non–YCA offenders." *Brown* at 770. However, the district court went on to explain that the phrase "insofar as possible" did modify both the requirements of separate facilities as well as segregation of YCA inmates from the general adult prison population. A narrower construction of "insofar as practical" is found in *United States ex rel. Dancy v. Arnold*, 572 F.2d 107 (3rd Cir. 1978), where the court held that the qualifying phrase applied only to the maintenance of separate institutions and did not affect the segregation requirement mandated by the statute.[2] And in *Watts v. Hadden*, 469 F.Supp. 223 (D.Colo. 1979), the court characterized the resistance of the Bureau of Prisons to implementation of the YCA as being due to a philosophical disagreement with Congress over the purpose of confinement as well as a matter of additional expense. As to the latter matter, the court stated that "[i]t is that consequence [added cost] which has previously been used to excuse the failure to follow the YCA under the pretext that the duty to segregate is limited by the "insofar as practical" language in § 5011. As clearly held in *Dancy v. Arnold* . . . and *Brown v. Carlson* . . ., that is not a correct interpretation of the YCA in the light of the legislative history." *Watts* at 235. Thus, the majori-

---

1. *See, e. g., Harvin v. United States*, 445 F.2d 675 (D.C.Cir.) *cert. denied*, 404 U.S. 943, 92 S.Ct. 292, 30 L.Ed.2d 257 (1971) (absolute ban on confining youth offenders in a penitentiary); *Abernathy v. United States*, 418 F.2d 288. (5th Cir. 1969) (YCA inmate could be assigned to a penitentiary).

2. In *United States ex rel. Dancy v. Arnold*, the Third Circuit considered the rehabilitative purpose behind the Act and the Report to the Judicial Conference of the Committee on Punishment for Crime (1942) which constituted much of the input which was adopted in the subsequent YCA legislation. *See Dorszynski*, 418 U.S. at 432, n.8, 94 S.Ct. at 3047. As the *Dancy* court found:

> Plainly Congress intended that the segregation of committed youth offenders from adult offenders was to be mandatory; the phrase "insofar as practical" was intended to refer only to the provision that institutions for the treatment of youth offenders should be used solely for that purpose. The congressional scheme was that youth offenders were at all times to be confined away from the corruptive influence of adult criminals. Placing a youth offender in the general population of a federal penitentiary is contrary to this scheme. (footnote omitted)

*Dancy* at 113.

ty's refusal to recognize that mandatory segregation of a YCA inmate is required by the statute is clearly contrary to the overwhelming weight of authority.

The second basis of my dissent is the assertion by the majority that the burden of proving that segregated confinement was in fact practical must be borne by the committed youth offender. I know of no authority in federal jurisprudence which supports such a proposition. The majority's reliance on *Abernathy v. United States*, 418 F.2d 288 (5th Cir. 1969),[3] is misplaced since that court discussed neither the segregation issue nor which party should properly bear the burden of applying the "insofar as practical" limitation to confinement of a youth offender. Even in *Brown v. Carlson, supra*, which recognized a limited discretion to confine a YCA inmate with the adult prison population, the court found that the Bureau had not met *its* burden of showing that "the departures from a scheme of segregation are only occasional, that they are compelled by unusual circumstances, or that they have been brief." *Brown* at 773. Thus, the Bureau had failed to establish that segregation of its YCA inmates was not practical. Such reasoning incorporates the obvious fact that the Bureau, not the youth offender, is in a much better position to determine whether the treatment mandated by § 5011 of the Act is available. Therefore, the burden should properly be that of the Bureau to show that treatment under § 5011 relating to segregated confinement was not practical in a given situation.

The majority next rejects appellant's argument that he should be segregated as a committed youth offender for the remainder of his original sentence imposed under the Act. The validity of the Bureau of Prisons Policy Statement 7300.136, which is challenged by the appellant as an unauthorized administrative limitation of a Congressional statutory scheme, is accepted by the majority without discussion. However, I believe that by excluding those youth offenders who also have a concurrent or consecutive adult term, the Bureau does more than merely interpret or clarify the existing congressional intent; it has usurped the legislative prerogative by modifying the scope of the Act. Section 5006(e) defines a "committed youth offender" as "one committed for treatment hereunder to the custody of the Attorney General pursuant to section 5010(b) and 5010(c) of this chapter." The only statutory provision for release from a sentence under 5010(b) or (c) is § 5017.[4] There is nothing in the statute or legislative history upon which an administrative agency can claim the authority to redefine who shall be a YCA inmate so as to deprive a committed youth offender of his right to the treatment specified in the Act.

The only possible justification behind such a policy regarding "dual status" offenders is to reduce overcrowding of YCA facilities. However, this rationale is seriously undermined by the admission of government counsel at oral argument that, as a practical matter, even young persons receiving an adult sentence are normally segregated from the adult population at confinement facilities. Thus, the effect of the challenged policy statement is to allow possible discriminatory classification and confinement of young offenders.

The final irony of the majority opinion is that it classifies the appellant as an adult offender whose request for imprisonment with youth offenders would defeat the rehabilitative purpose of the Act. First, this view is inconsistent with the majority's ear-

---

3. In *Abernathy*, the court held that: (1) the Attorney General had the authority under § 5015(b) to designate the place of confinement and transfer inmates from one institution to another and (2) a person sentenced under the Federal Juvenile Delinquency Act could be imprisoned in an adult institution. Hence, since committed youth offenders were analogous to those sentenced under the Juvenile Act, they could also be confined in an adult facility. This rationale has been completely discredited by the 1974 amendments to the Juvenile Act which prohibit the confinement of juveniles in an adult facility or penitentiary.

4. Section 5017 of the Act outlines the general procedures for the conditional and unconditional release of youth offenders.

lier statement that a youth offender has no mandatory right to segregated confinement from adult offenders. This desire for statutory compliance is somewhat belied by the majority's condonation of the failure to segregate the appellant from the regular adult population at his place of confinement. Second, the cases cited by the majority do not support the contention that the appellant is now to be considered only as an adult offender. The issue being resolved in both *Roddy v. United States*, 509 F.2d 1145 (10th Cir. 1975), and *Nast v. United States*, 415 F.2d 338 (10th Cir. 1969), was the propriety of imposing a consecutive adult sentence upon a committed youth offender. Since Outing does not challenge his adult sentence, these authorities are not relevant to this appeal. While a concurrent adult term could conceivably strip a youth offender of his status under the YCA, there is absolutely no justification for such disposition of those receiving a *consecutive* adult sentence. Had Congress intended such a result, after such a long and careful study of the English experience, it would surely have provided for such reclassification in the Act.

I believe that the proper approach is the one outlined in *Mustain v. Pearson*, 592 F.2d 1018 (8th Cir. 1979). In that case, a youth offender sentenced under the Act received a subsequent consecutive adult sentence for escaping from the correctional institution. After receiving this second term, he continued serving his YCA sentence as a youth offender until his conditional release under § 5017(c), at which time he began serving the consecutive adult sentence. Upon completion of this latter term, and after violating his conditional release under the first sentence, he was arrested and ordered to serve the remainder of his original sentence at the former YCA facility. In upholding this approach, the *Mustain* court reasoned that "[w]hile the rehabilitative potential under FYCA might be lessened by a consecutively imposed consecutive adult sentence, this consequence stems from the subsequent offense and does not invalidate the subsequent sentence .... Nor could it render legally ineffective the FYCA sentence." *Mustain* at 1021.

As the *Mustain* decision shows, once a person is committed as a youth offender under the Act, a later consecutive adult sentence does not abrogate the continuing jurisdiction under the YCA. The majority's refusal to acknowledge that the appellant has continuously been denied the treatment to which lawfully entitled simply flies in the face of the rehabilitative purpose of the statute. Therefore, I dissent.