John Carroll ROBINSON, Petitioner-Appellee, Cross-Appellant,

v.

George A. RALSTON, Warden, Respondent-Appellant, Cross-Appellee.

Nos. 80–1323, 80–1142.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 6, 1980.

Decided March 5, 1981.

Lance E. Lindblom, Jenner & Block, Chicago, Ill., for petitioner-appellee, cross-appellant.

Mary B. Beauparlant, Asst. U. S. Atty., East St. Louis, Ill., for respondent-appellant, cross-appellee.

Before SWYGERT, Circuit Judge, WISDOM, Senior Circuit Judge,* and PELL, Circuit Judge.

SWYGERT, Circuit Judge.

The issue in this appeal is whether a youth offender serving a sentence imposed under the Federal Youth Corrections Act (YCA), 18 U.S.C. § 5005 *et seq.*, must be treated according to the terms of the YCA after he has received two subsequent adult sentences to run consecutive to his YCA sentence. We hold that under the provisions of the YCA, petitioner-appellee must be treated pursuant to the YCA until the termination of his YCA-imposed sentence despite his subsequent sentencing as an adult. Accordingly, we affirm.

I

Petitioner-appellee John Carroll Robinson was seventeen years old when in

* The Honorable John M. Wisdom, United States Senior Circuit Judge for the Fifth Circuit, sitting by designation.

1974 he was sentenced to a ten-year term for second degree murder under the provisions of the Federal Youth Corrections Act (YCA), 18 U.S.C. § 5010(c).[1] The trial judge recommended that "his release be dependent upon the attainment of at least an eighth grade level of education and the successful completion of a trade of his own choosing." In addition, the judge recommended participation "in intensive, individual therapy on a weekly basis. . . ."

During his incarceration at the Federal Correctional Institution in Ashland, Kentucky, Robinson was found guilty of assaulting a federal officer. The second trial judge decided that Robinson would not benefit from treatment under the YCA and imposed an additional ten-year adult sentence, pursuant to 18 U.S.C. § 4208(b). After receiving a report and recommendation from the Bureau of Prisons, the judge reduced the second ten-year sentence to sixty-six months, to run consecutive to the previously-imposed YCA sentence.

After several subsequent transfers, Robinson was placed in the Federal Correctional Institution in Lompoc, California where he pled guilty to assaulting another federal officer. For that offense, he was given a regular adult sentence of one year and one day to run consecutive to his YCA and other adult sentences. The third trial judge did not make an explicit finding that Robinson would receive no benefit from a YCA sentence, although it is not disputed that

Robinson was still eligible for sentencing under the YCA.

After the imposition of his second adult sentence, Robinson was placed in the United States Penitentiary at Terre Haute, Indiana, where he was treated as a regular adult offender. He was not segregated from non-YCA adult offenders nor was he provided the treatment mandated by section 5011 of the Youth Corrections Act, 18 U.S.C. § 5011.[2] It is not disputed that Robinson was at that time serving his initial YCA sentence. After exhausting his administrative remedies, Robinson filed a petition for a writ of habeas corpus on May 25, 1978 in the United States District Court for the Southern District of Indiana. The case was subsequently transferred to the Southern District of Illinois because in September 1978 Robinson was moved to the United States Penitentiary at Marion, Illinois. Robinson was still serving his YCA sentence when he was incarcerated with adult prisoners in the control unit at Marion. The basis of the habeas petition was that Robinson was serving a YCA sentence and was therefore entitled to be segregated from adult offenders pursuant to 18 U.S.C. § 5011.

On the recommendation of the United States Magistrate that Robinson be transferred to an institution in which he would be segregated from adult offenders and receive the treatment contemplated by the YCA, Judge Foreman granted Robinson a

---

1. Under the provisions of the YCA, a judge who sentences an offender who is under the age of twenty-two when convicted may (a) place the offender on probation; (b) commit him to the custody of the Attorney General for treatment for a maximum period of four years, with an additional period of probation; (c) make a similar commitment for a period not to exceed the maximum adult sentence for the crime; or (d) sentence the youth offender as an adult. 18 U.S.C. § 5010; *Dorszynski v. United States*, 418 U.S. 424, 433–434, 94 S.Ct. 3042, 3047–3048, 41 L.Ed.2d 855 (1974). A judge sentencing a youth offender must determine whether the offender will benefit from treatment under the YCA as a condition precedent to sentencing him as an adult. *Dorszynski*, 418 U.S. at 444, 94 S.Ct. at 3053.

2. According to 18 U.S.C. § 5011:

Committed youth offenders not conditionally released shall undergo treatment in institutions of maximum security, medium security, or minimum security types, including training schools, hospitals, farms, forestry and other camps, and other agencies that will provide the essential varieties of treatment. The Director [of the Bureau of Prisons] shall from time to time designate, set aside, and adapt institutions and agencies under the control of the Department of Justice for treatment. Insofar as practical, such institutions and agencies shall be used only for treatment of committed youth offenders, and such youth offenders shall be segregated from other offenders, and classes of committed youth offenders shall be segregated according to their needs for treatment.

writ of habeas corpus, concluding "after a thorough researching of the applicable statute and case law, ... that Congress has mandated the result which the Magistrate has arrived at." On January 7, 1980 the district court ordered the Government to transfer Robinson from Marion to an institution where he would be segregated from other adult offenders and would receive the prescribed treatment. On January 16, 1980, the Government filed a motion to stay the order pending appeal. That motion was granted.

The Government appealed from the district court's January 7 order granting the writ of habeas corpus, and Robinson appealed the January 22 stay of that order. The appeals were consolidated.

On June 17, 1980, Robinson was again transferred, this time from Marion to the Federal Correctional Institution at Memphis, Tennessee. The institution at Memphis does have a YCA unit, but Robinson was housed with the general adult prison population and did not receive YCA-mandated treatment.[3]

## II

The respondent Warden contends that the district court erred in holding that the YCA requires that petitioner be treated according to the provisions of the YCA after he has received two subsequent adult sentences to run consecutive to his YCA sentence. Petitioner argues that the decision reached by the district court is mandated both by the YCA and the United States Constitution.[4]

The issue before us has never been decided by this court. The Third Circuit, however, faced with a similar fact pattern, concluded that a second judge's determination that an offender would not derive benefit from a YCA sentence and must therefore serve the second sentence as an adult prisoner was also a finding that "*continued* service of the original sentence under YCA conditions is no longer beneficial." *Thompson v. Carlson*, 624 F.2d 415, 422 (3d Cir. 1980) (emphasis in original). On the basis that there was a "judicial reevaluation [of the original YCA sentence] in light of currently available information," the court held that the offender could be treated as an adult for the duration of his YCA sentence. *Id.* Because we conclude that the YCA mandates that the petitioner be treated as a YCA prisoner so long as he is serving his YCA sentence, we respectfully disagree with the decision of the Third Circuit.[5]

At the outset we note that in both our case and in *Thompson*, the judge imposing the consecutive adult sentence made no actual reevaluation of the YCA sentence then being served. Rather the Warden here argues and the court in *Thompson* concluded that the subsequent judge's determination that the sentence he imposed should be served as an adult was an implicit finding that the offender would not continue to benefit from YCA treatment for the duration of his YCA sentence. We find no evidence in the record from which to conclude that the subsequent judges did in fact reevaluate the original YCA sentence; however, we do not rest our holding on that factual determination. We conclude that the YCA does not permit such a reevaluation, even if it were explicitly made.

The parties agree that the YCA contains no provision authorizing a YCA sentence to be reevaluated by another judge. Nonetheless, the Warden urges, quoting from the Third Circuit's decision in *Thompson*, that we "fill in the interstices of the statute" by allowing a second judge who sentences the offender as an adult also to reevaluate the

---

**3.** At oral argument, counsel for petitioner stated that Robinson has since been transferred to a hospital in Butner, North Carolina, for psychiatric evaluation.

**4.** We need not decide the constitutional issues raised, because we hold that the statute mandates the result we reach.

**5.** This opinion has been circulated among all judges of this court in regular active service. No judge favored a rehearing en banc on the question of our declining to follow *Thompson v. Carlson*.

YCA sentence. 624 F.2d at 419. Based on our analysis of the statutory language, the legislative history, and the Supreme Court's decision in *Dorszynski v. United States*, 418 U.S. 424, 94 S.Ct. 3042, 41 L.Ed.2d 855 (1974), we reject the Warden's suggested interpretation.

Petitioner was initially sentenced under the YCA, the purpose of which was "to provide a better method of treating young offenders convicted in federal courts in that vulnerable age bracket, to rehabilitate them and restore normal behavior patterns." *Dorszynski v. United States*, 418 U.S. 424, 433, 94 S.Ct. 3042, 3047, 41 L.Ed.2d 855 (1974). According to the terms of the statute, regardless of whether he is housed in an institution of maximum, medium or minimum security, a committed youth offender must be segregated from adult prisoners. 18 U.S.C. § 5011; *United States ex rel. Dancy v. Arnold*, 572 F.2d 107 (3d Cir. 1978).[6] In addition, a committed youth offender must be sentenced to an institution or agency "that will provide the essential varieties of treatment" and be "segregated according to [his need] for treatment." 18 U.S.C. § 5011. As the Third Circuit stated in *Micklus v. Carlson*, 632 F.2d 227, 237 (3d Cir. 1980) (emphasis in original): "The major thrust of Section 5011 is its requirement of both *segregation* and *treatment* for committed youth offenders." In *Micklus*, the court held that the rights to segregation and treatment are clear entitlements under the YCA which create a liberty interest protected by the Due Process Clause of the United States Constitution.

Sentencing a youth offender under the YCA does "not deprive the court of any of its present function as to sentencing." S.Rep. No. 1180, pp. 10–11, quoted in *Dorszynski v. United States*, 418 U.S. at 439, 94 S.Ct. at 3050. To interpret the YCA as permitting a second judge who sentences the petitioner on a totally unrelated matter to reevaluate the original YCA sentence would necessarily deprive the judge who imposed the only sentence currently being served of his traditional and exclusive sentencing function. The legislative history of the YCA indicates an adherence to traditional sentencing doctrine by specifying that the benefit of the Act would be available to those " 'who *in the opinion of the sentencing judge* show promise of becoming useful citizens....' H.R.Rep. No. 2979, p. 1 (emphasis added)," quoted in *Dorszynski*, 418 U.S. at 436, 94 S.Ct. at 3049. The decision to sentence Robinson under the YCA was left to the discretion of the judge who determined that he would benefit from its provisions for the period for which he was sentenced. That sentence was not intended to be revoked by another judge in a completely different proceeding on another matter.

In *Dorszynski v. United States*, 418 U.S. 424, 94 S.Ct. 3042, 41 L.Ed.2d 855 (1974), the Supreme Court interpreted the YCA to require a trial judge to make a finding that a youth offender would derive no benefit from a YCA sentence before sentencing him as an adult. The Court held, however, that the no benefit finding was not to be read as a substantive standard which had to be satisfied. That reading, the Court reasoned, would subject the sentence to appellate review and thereby limit the sentencing discretion of the trial court:

> The intent of Congress was in accord with long-established authority in the United States vesting the sentencing function exclusively in the trial court.
>
> .   .   .   .   .
>
> ... We will not assume Congress to have intended such a departure from well-established [sentencing] doctrine without a clear expression to disavow it. As our review has shown, the exclusive sentencing power of district judges was acknowledged, and Congress' intention to affirm that power was clearly indicated.

---

6. "Youth offender means a person under the age of twenty-two years at the time of conviction.
   18 U.S.C. § 5006(e).

"Committed youth offender" is one committed for treatment hereunder to the custody of the Attorney General pursuant to section 5010(b) and 5010(c) of this chapter.
18 U.S.C. § 5006(f).

. . . We hold that the discretion vested in a district judge under § 5010(d) is essentially the same as the traditional discretion vested in the court. . . .

418 U.S. at 440–42, 94 S.Ct. at 3051–52 (footnote omitted).[7] The Warden's interpretation of the YCA is such "a departure from well-established doctrine without a clear [congressional] expression to disavow it," and we reject it here.

A judicial reevaluation of a YCA sentence is not inconsistent with the YCA, the Warden insists, because the YCA expressly allows judicial reevaluation in 18 U.S.C. § 5023(a) and 18 U.S.C. § 5010(a). The relevant portions of those sections provide:

> Nothing in this chapter shall limit or affect the power of any court to suspend the imposition or execution of any sentence and place a youth offender on probation. . . .

18 U.S.C. § 5023(a).

> If the court is of the opinion that the youth offender does not need commitment, it may suspend the imposition or execution of sentence and place the youth offender on probation.

18 U.S.C. § 5010(a).

There are two crucial distinctions between the statutory provisions cited and the interpretation of the YCA urged by the Warden. First, we read the statute to refer to action taken by the judge who originally imposed that sentence, not by another judge who is sentencing the youth offender in an entirely different matter. As the Supreme Court noted, "the new options of treatment and probation [are] made available to the federal *sentencing court* under the Act," *Dorszynski*, 418 U.S. at 435, 94 S.Ct. at 3049 (footnote omitted) (emphasis added). Second, the nature of the reevaluation proposed by the Warden is vastly different from that in the above-cited provisions. Sections 5023 and 5010(a) simply make clear that the YCA was not intended to limit the already existing power of the

trial judge to give suspended sentences or probation. *See Thompson v. Carlson*, 624 F.2d 415, 425–26 (3d Cir. 1980) (Adams, J., dissenting).

A novel sentencing option is expressly given in section 5021(b):

> Where a youth offender has been placed on probation by the court, the court may thereafter, in its discretion, unconditionally discharge such youth offender from probation prior to the expiration of the maximum period of probation theretofore fixed by the court, which discharge shall automatically set aside the conviction. . . .

That section, authorizing the sentencing judge to discharge the offender unconditionally and to set aside the conviction, is consistent with the purpose of the YCA, which represents "a departure from traditional sentencing, and [is] focused primarily on correction and rehabilitation." *Dorszynski*, 418 U.S. at 433, 94 S.Ct. at 3047. The Warden asks us to read into this Act which has as its ultimate purpose rehabilitation, a highly unusual sentencing option that would permit one judge to reevaluate another judge's YCA sentence and impose in its place a traditional adult sentence. There is "not a word" in the statute or its legislative history "about augmenting sentences or about having a second judge in any way change them." 624 F.2d 415, 426 (3d Cir. 1980) (Adams, J., dissenting). Such a reading is contrary to the letter and the spirit of the act, and the cited provisions do not convince us otherwise.

The Warden reminds us that when the plain meaning of the words of a statute leads to an " 'absurd or futile' " result, the courts must look beyond the statutory language. *Perry v. Commerce Loan Co.*, 383 U.S. 392, 400, 86 S.Ct. 852, 857, 15 L.Ed.2d 827 (1966) (citation omitted). Because petitioner here will eventually be subject to the influence of hardened criminals inasmuch as he will have to serve two consecutive

---

**7.** As the Supreme Court pointed out in *Dorszynski v. United States*, 418 U.S. at 440, n. 14, 94 S.Ct. at 3051, n. 14, it has been noted that " 'the discretion of the judge . . . in [sentencing] matters is virtually free of substantive control or guidance,' Kadish, *Legal Norm and Discretion in the Police and Sentencing Processes*, 75 Harv.L.Rev. 904, 916 (1962)."

adult sentences, it is argued that requiring him to be treated according to the terms of the YCA for the duration of the YCA sentence is a futile act. We do not agree. As Judge Adams stated in his persuasive dissent in *Thompson v. Carlson,*

> [I]t may be that a youth who goes through a period of treatment in a youth correction center would be less susceptible to the influences of hardened criminals during his subsequent confinement than one not so treated. This might be so if one accepts the motivating assumption, which was central to the enactment of the statute, that an offender is more susceptible to corrective treatment and rehabilitation as a "youth" than in later years, *Dorszynski,* 418 U.S. at 432–33, 94 S.Ct. at 3047–48.

624 F.2d at 428.

Additionally, as counsel for petitioner suggested at oral argument, the two judges who subsequently imposed the consecutive adult sentences, presumably knowing that petitioner was currently serving a YCA sentence, might have decided to sentence petitioner as an adult precisely because he was currently a YCA prisoner—believing that after the completion of YCA treatment, further treatment would not be needed; or that if petitioner had not benefited from treatment at the conclusion of his YCA sentence, he would not benefit from a second YCA sentence.

We agree with the Eighth Circuit which stated in *Mustain v. Pearson,* 592 F.2d 1018, 1021 (8th Cir. 1979) (citation omitted) (emphasis added):

> While the rehabilitative potential under [the YCA] might be lessened by a consecutively imposed consecutive adult sentence, this consequence stems from the subsequent offense and does not invalidate the subsequent sentence . . . *Nor could it render legally ineffective the [YCA] sentence.*

### III

The Warden argues alternatively that 18 U.S.C. § 5011 should be interpreted to give the Bureau of Prisons the discretion to decide whether a prisoner serving a YCA sentence but facing a consecutive adult sentence should be confined as an adult. The pertinent part of that section provides:

> The Director shall from time to time designate, set aside, and adapt institutions and agencies under the control of the Department of Justice for treatment. Insofar as practical, such institutions and agencies shall be used only for treatment of committed youth offenders, and such youth offenders shall be segregated from other offenders, and classes of committed youth offenders shall be segregated according to their needs.

18 U.S.C. § 5011.

The "insofar as practical" language, it is suggested, permits the Bureau of Prisons to determine that petitioner may be treated as an adult prisoner, despite the fact that he is serving a sentence imposed under the YCA. That argument was rejected by the Third Circuit in *Thompson:*

> If we were to so construe the statute, we would expand considerably the power given to the Bureau of Prisons by vesting in it that which Congress has given exclusively to the judiciary, *i. e.,* the determination whether the offender can benefit under the YCA. We find no statutory basis or policy reason for such a construction. Despite the control given the Bureau of Prisons over many aspects of the commitment of the youth offender, Congress has not given it either the power to invoke or the power to revoke the application of the statute to a committed youth offender. Even in the case of prisoners who have manifested serious adjustment difficulties after commitment, the Bureau of Prisons is limited to designation of an appropriate institution or, as we noted in [*United States ex rel. Dancy v. Arnold,* 572 F.2d 107 (3d Cir. 1978)], segregation of committed youth offenders according to their needs for treatment. 572 F.2d at 113 n. 10.

624 F.2d at 421.

As was pointed out in *United States ex rel. Dancy v. Arnold,* 572 F.2d at 113 n. 10, the problem of the corruptive influence of a

criminally sophisticated YCA offender was foreseen by Congress; the YCA provides for treatment in maximum security institutions and requires that "classes of committed youth offenders [ ] be segregated according to their needs for treatment." 18 U.S.C. § 5011. For the reasons given in *Thompson,* we hold that the Bureau of Prisons does not have the power to determine that a committed youth offender serving a YCA sentence can be treated as an adult prisoner even though he was subsequently sentenced to additional terms as an adult.

In summary, we hold the trial judge properly ruled that petitioner must receive segregation and treatment according to the provisions of the YCA for the duration of his YCA sentence.[8] The district court is affirmed.

PELL, Circuit Judge, concurring.

The record in this case scarcely indicates that Robinson was benefitting from YCA treatment. Two federal district judges determined, one explicitly and the other in effect, that Robinson would receive no benefit from YCA treatment. These determinations would be effective in any event, whenever and however, the YCA period of the sentence was completed. That might have been very shortly after the date on which the adult sentences were entered.

While I see, on this record, no indication to think that either Robinson or society will benefit by continuing the YCA treatment, Congress, by the statute applicable in this case, has mandated the continuance.

Accordingly, I concur in Judge Swygert's opinion.

---

**8.** In view of our decision, we dismiss the cross-appeal from the district court's stay pending appeal, because that stay will automatically terminate when the mandate of this court issues.