**Peter H. JOHNSON, Petitioner-Appellee,**

**v.**

**George RODGERS, Warden, Respondent-Appellant.**

No. 83–2636.

United States Court of Appeals, Tenth Circuit.

March 5, 1985.

Douglas W. Curless, Asst. U.S. Atty., Denver, Colo. (Robert N. Miller, U.S. Atty., for the Dist. of Colo., Denver, Colo., with him on the brief), for respondent-appellant.

Vicki Mandell-King, Asst. Federal Public Defender, Denver, Colo. (Michael G. Katz, Federal Public Defender, Denver, Colo., with her on the brief), for petitioner-appellee.

Before McKAY and LOGAN, Circuit Judges and RUSSELL, District Judge.*

McKAY, Circuit Judge.

The issue in this case is whether the trial court erred in awarding petitioner good-time credits as equitable relief for failure to provide him with treatment and rehabilitation as required under the Youth Corrections Act.

Petitioner was convicted of assaulting a federal officer in violation of 18 U.S.C. § 111. He was sentenced to a zero-to-six year sentence pursuant to 18 U.S.C. § 5010(b) of the Youth Corrections Act, and was sent to the Federal Correctional Institution in Englewood, Colorado. Petitioner filed a petition for habeas corpus alleging, *inter alia,* that he was entitled to good-time credit because he was being denied the rehabilitation programs to which he was entitled under the YCA. The petition was referred to a magistrate, who held an evidentiary hearing and recommended that all of petitioner's claims be dismissed. Petitioner filed extensive objections to these findings and recommendations. The district court reviewed the file, the magistrate's recommendations, and the objections, and entered an order awarding good-

time credits to the petitioner. The government appeals.

We have reviewed the trial court's order and find it to be supported in the record and in accordance with the law. Because the trial court did not publish its order, we here summarize its findings and rationale.

The core purpose of the Youth Corrections Act is rehabilitation. *Dorszynski v. United States,* 418 U.S. 424, 94 S.Ct. 3042, 41 L.Ed.2d 855 (1974). To accomplish this purpose, a youthful offender may receive an indeterminate sentence, during which he is to undergo a comprehensive program of rehabilitation, followed by a period of conditional release. 18 U.S.C. §§ 5010(b) and 5017(c). The time of release is based upon a determination that the offender has acquired the stability and redirection to overcome the past and begin life anew. As a result, it is possible for a youthful offender to be confined longer than an adult who has been convicted of the same offense. An offender sentenced under the YCA is not eligible for good-time credit since the indicator for early release is not the sentence as reduced by good time, but demonstrated progress toward rehabilitation. *See Staudmier v. United States,* 496 F.2d 1191, 1192 (10th Cir.1974).

The rehabilitation thus "may be regarded as a quid pro quo for a longer confinement." *Carter v. United States,* 306 F.2d 283, 285 (D.C.Cir.1962). Accordingly,

[w]here YCA offenders are not given special treatment in accordance with the law but instead have the same terms and conditions of confinement as other offenders, the imposition of a sentence which tends to be longer on youth offenders raises a potential stumbling block of constitutional dimension.

*Watts v. Hadden,* 651 F.2d 1354, 1365 (10th Cir.1981). *See Johnson v. Smith,* No. 78–71747, slip op. (E.D.Mich. March 18, 1983) (unfair for YCA offenders to serve longer sentences than adults without either good-time allowances or specialized treatment.)

* Honorable David L. Russell, United States District Judge for the Districts of Oklahoma, sitting by designation.

For petitioner this "constitutional stumbling block" was not merely potential, but starkly real. He is serving a zero-to-six year sentence. The comparable sentence for an adult who commits the same offense is a three-year maximum. In April of 1982, he unfortunately witnessed a prison assault and thus became a target for possible inmate violence. He was placed in administrative detention for his own safety and remained there until he was transferred to the Federal Correctional Institution in Morgantown, West Virginia, in February 1984. The district court found that while he was in protective custody he could not participate in the minimum required YCA rehabilitative programs, because a number of them are group functions and were not accessible to petitioner while he was housed in administrative isolation.**

As a result, the district court found that petitioner was confined under substantially worse terms and conditions than an adult offender. He lacked the rehabilitative benefits of the YCA, yet he was serving a longer sentence than would an adult, and without the incentive of early release based on good-time credit that an adult would enjoy. In view of the clear congressional intent expressed in the YCA, the conditions of petitioner's incarceration were legally unacceptable.

 The respondent has attempted to shift the burden of this dilemma to the petitioner. But it is the prison administration, not petitioner, that Congress instructed to implement the YCA. If the prison administration could not, under the circumstances, provide petitioner with rehabilitative programs, it should have taken effective remedial action. As the district court found, since petitioner was not accorded the rehabilitative opportunities that were the *quid pro quo* for his longer sentence, he is entitled, in equity and conscience, to the good-time credit he would have earned had he been serving an adult sentence. *See Johnson v. Bell*, 487 F.Supp. 977 (E.D.

** In November 1983 petitioner received material for a correspondence course in accounting, a form of rehabilitative training. Petitioner only

Mich.1980), and subsequent remedial order, *Johnson v. Smith*, No. 78–71747, slip op. at 6 (E.D.Mich. March 18, 1983) (ordering statutory good-time credit for youths held under conditions violative of the Youth Corrections Act).

The only issue raised on appeal not dealt with in the district court's opinion is the question of whether, after rejecting the magistrate's recommendations, the district court erred in making new fact findings without either remanding the petition to the magistrate for further findings or holding a hearing. The district court is required to make a *de novo* determination of the portions of the magistrate's report to which objections are made. Rule 8(b)(4), Rules Governing Proceedings in the United States District Courts under Section 2255 of Title 28, United States Code (1984). Thus we find no merit in the contention that the court should have remanded the case to the magistrate for fact findings. The requirement of a *de novo* determination does not, however, mean that a *de novo* hearing is required. *United States v. Raddatz*, 447 U.S. 667, 674, 100 S.Ct. 2406, 2411, 65 L.Ed.2d 424 (1980). As the House Report makes explicit, "the use of the words 'de novo determination' *is not intended to require the judge to actually conduct a new hearing* on contested issues." H.R.Rep. No. 94–1609, p. 3 (1976) (quoted in *Raddatz*, 447 U.S. at 675, 100 S.Ct. at 2412). The district court acted within its discretion in finding, based on the record before it, that petitioner was denied rehabilitation, and its conclusion is supported by the record. The award of good-time credits was, therefore, appropriate.

AFFIRMED.

claims entitlement to good-time credit for the period of March 1982 through November 1983.