**Rev. Timothy L. LEWIS, Appellant,**

v.

**ATTORNEY GENERAL OF the UNITED STATES and Warden, United States Penitentiary at Lewisburg, et al.**

**No. 88–5515.**

United States Court of Appeals, Third Circuit.

Argued Feb. 28, 1989.

Decided June 28, 1989.

OPINION OF THE COURT

COWEN, Circuit Judge.

This appeal presents two novel questions of law in this Circuit involving a prisoner serving a sentence under the Youth Corrections Act. The prisoner was convicted of another crime while serving the youth sentence and, because of the court's finding that he would no longer benefit from treatment as a youth offender, he was given a consecutive sentence as an adult. The first issue is whether the prisoner is entitled to receive statutory good time credits because of the failure, pursuant to this "no further benefit" finding, to segregate him from adult prisoners, as the Youth Corrections Act requires. The second issue is whether the same prisoner is similarly entitled to good time credits because he was not segregated from adult prisoners during certain periods of his incarceration even before he was sentenced as an adult.

The district court held that the prisoner was not entitled to receive any good time credits. We hold that he is entitled to good time credits for the period starting from his sentencing as an adult, but not for time allegedly served under conditions violating the YCA prior to the adult sentencing. We therefore will reverse and remand for disposition in accordance with this Opinion.

I.

On October 26, 1979, Timothy Lewis ("Lewis") was sentenced in the Superior Court for the District of Columbia to a fifteen year term for assault with intent to rob, and to a ten year concurrent term for assault with a dangerous weapon. Both sentences were imposed under the Youth Corrections Act, 18 U.S.C. §§ 5005–26 (1982) (repealed 1984) ("YCA").[1]

While serving this sentence at the Federal Correctional Institution at Petersburg, Virginia, Lewis was convicted of assault by striking, beating or wounding within the special territorial jurisdiction of the United

James V. Wade, Acting Federal Public Defender, and Melinda C. Ghilardi (argued), Asst. Federal Public Defender, Scranton, Pa., for appellant.

James J. West, U.S. Atty., James A. Gibbons and Lorna N. Graham (argued), Asst. U.S. Atty., Scranton, Pa., for appellees.

Before HIGGINBOTHAM, STAPLETON, and COWEN, Circuit Judges.

1. In section II. of this Opinion we describe the major features of the YCA. Although the YCA has been repealed, Lewis was sentenced when the statute was in force and thus it applies in this case.

States, in violation of 18 U.S.C. § 113(d). On October 21, 1982, the United States District Court for the Eastern District of Virginia sentenced Lewis to six months in prison for that offense, to run consecutively with the sentences which he was already serving. Moreover, pursuant to *Ralston v. Robinson*, 454 U.S. 201, 102 S.Ct. 233, 70 L.Ed.2d 345 (1981), discussed *infra* section III.A., the sentencing court imposed the six-month sentence on Lewis as an adult, after specifically finding that Lewis would obtain no further benefit from being treated as a youth offender under the YCA. App. at 46.

As a result of the "no further benefit" finding made by the court in the 1982 sentencing, Lewis' participation in the YCA program was terminated and his treatment as an adult prisoner began. Since then he has not been segregated from adult prisoners, as mandated under the YCA.[2]

On January 8, 1988, Lewis filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 in the United States District Court for the Middle District of Pennsylvania. The essence of Lewis' habeas petition was that his treatment as an adult, pursuant to the court's finding of no further benefit, transformed his YCA sentence into an adult sentence and required that he be granted good time credits like other adult prisoners. App. at 11. The brief in support of the petition also contained an argument that Lewis had been

housed with adults, in violation of the YCA, even before the 1982 sentencing. App. at 25.[3]

On February 11, 1988, Lewis filed a motion for summary judgment on the transformation issue. App. at 49–59. Pursuant to the district court's request, the parties filed briefs on the issues raised in *Scott v. United States*, 778 F.2d 1444 (10th Cir. 1985) (per curiam), and *Johnson v. Rodgers*, 756 F.2d 79 (10th Cir.1985), discussed *infra* section III. On May 6, the court denied Lewis' application for bail pending a decision on the merits of his petition. On June 6, the district court issued a memorandum opinion and order denying Lewis' petition for habeas corpus and his motion for summary judgment.[4] Lewis filed a notice of appeal on June 17, and he filed a *pro se* appellate brief with this Court on July 27. On November 29, 1988, counsel was appointed to represent Lewis.

## II.

The core purpose of the YCA is rehabilitation. *See Dorszynski v. United States*, 418 U.S. 424, 433, 94 S.Ct. 3042, 3048, 41 L.Ed.2d 855 (1974). To this end, the YCA allows a youthful offender to receive an indeterminate sentence, during which time he is to undergo a comprehensive program of rehabilitation, followed by a period of conditional release. *See* 18 U.S.C. §§ 5010 and 5017.[5] The time of release is based on a determination that the offender has made

2. Both sides agree that Lewis was no longer segregated from adult prisoners after the 1982 sentence and "no further benefit" finding. Moreover, there appears to be no record evidence indicating that after 1982 Lewis received any other benefits accorded under the YCA, despite the appellees' general assertions to that effect. Appellees' Supplemental Brief, at 8–9. When pressed on this issue at oral argument, counsel for the appellees admitted that there was "nothing in the record" to show that Lewis received any benefits of the YCA after 1982. She later asserted that Lewis was housed with other youths, but within a larger facility containing adults. This assertion is not supported by the record, however. Nor did the district court find that Lewis retained any YCA benefits. That court referred to Lewis as an "adult prisoner", app. at 237, and emphasized his "adult treatment", app. at 239. Thus, we review this case with the understanding that Lewis was deprived of *all* YCA benefits after the 1982 sentencing.

3. In this Opinion we will refer to first issue as the "transformation" issue and the second issue as the "nonsegregation" issue.

4. The order also denied Lewis' motion for a temporary restraining order. App. at 235. On March 21, 1988 Lewis had filed a motion for a temporary restraining order and/or preliminary injunction directing defendants "not to move or transfer" Lewis during the pendency of the litigation, "in retaliation for bringing his writ of Habeas Corpus Action." District court record, document no. 28, at 1.

5. The YCA provides a number of alternatives to traditional sentencing: suspension of sentence and probation, *see* § 5010(a); commitment for treatment and supervision for an indeterminate period of up to four years, with up to an additional two years of supervision, *see* §§ 5010(b) and 5017(c); commitment and treatment for any period authorized by law, *see* § 5010(c); or

sufficient progress towards rehabilitation, and thus it is possible for a youthful offender sentenced under the YCA to be confined longer than an adult who has been convicted of the same offense. *See Johnson v. Rodgers,* 756 F.2d 79, 80 (10th Cir. 1985).[6]

An important principle of the YCA is that, once a person is committed for treatment under the YCA, the sentence is designed to fit the person, not the crime. *Dorszynski,* 418 U.S. at 434, 94 S.Ct. at 3048. The person committed is subject to study and recommendation as to appropriate treatment, *see* 18 U.S.C. §§ 5014 and 5015, and to a broad range of treatment options, ranging from maximum security confinement to forestry camps, *see* 18 U.S.C. § 5011. A fundamental aspect of the treatment program is that youth offenders are segregated, along with those requiring similar treatment, from offenders serving traditional criminal sentences, *see* 18 U.S.C. § 5011, in order to "avoid the influence of association with the more hardened inmates." *Dorszynski,* 418 U.S. at 434, 94 S.Ct. at 3048.[7]

### III.

### A.

In challenging the denial of his petition for habeas corpus, Lewis seeks review of the district court's legal conclusions, and thus our standard review is plenary.

We first review the transformation issue. The sentencing court in 1982 specifically found that Lewis would no longer benefit from youth status under the YCA, and shortly thereafter Lewis' incarceration with adults began. Lewis argues that he is entitled to good time credits based on a theory that his YCA sentence was transformed into an adult sentence as a result of the "no further benefit" finding in the 1982 sentencing. Lewis does not challenge the 1982 sentencing decision itself, but only the denial of good time credits pursuant to that sentence.[8]

We have previously noted that "[n]either the Congressional history nor the statute made any provision for the possibility that the treatment provided would be so unsuccessful that the committed YCA offender might commit a serious crime during a YCA sentence and thereby be required to serve a subsequent adult sentence." *Thompson v. Carlson,* 624 F.2d 415, 420 (3d Cir.1980). Likewise, the YCA neither explicitly provides for good time credits nor instructs as to good time entitlement when a youth offender is sentenced as an adult during service of the YCA sentence.

Good time credits are provided for under a separate federal statutory scheme. *See*

commitment as an adult offender pursuant to any applicable penalty provision, *see* § 5010(d). The court may also order commitment for study and observation to determine whether a youth offender is likely to benefit from treatment under §§ 5010(b) or (c). *See* § 5010(e).

6. Lewis' YCA sentence appears to be no longer than the maximum sentence to which he would have been subject had he originally been sentenced as an adult. Lewis was sentenced pursuant to 18 U.S.C. § 5010(c), *see* app. at 96, which provides that a youth sentenced for over six years can receive "any further period that may be authorized by law for the offense or offenses of which he stands convicted." Section 5010(b), in contrast, provides that a youth may be sentenced "in lieu of the penalty of imprisonment otherwise provided by law."

7. Section 5011 states, in part: "Insofar as practical, such institutions and agencies shall be used only for treatment of committed youth offenders, and such youth offenders shall be segregated from other offenders, and classes of committed youth offenders shall be segregated

according to their needs for treatment." In *United States ex rel. Dancy v. Arnold,* 572 F.2d 107 (3d Cir.1978), we construed this section to require that youth offenders sentenced under the YCA *must* be segregated from adult prisoners. We held that the language "[i]nsofar as practical" referred only to the provision that institutions for the treatment of youth offenders should be used solely for that purpose, and not to the provision that youth offenders be segregated from adult offenders. *Id.* at 109.

8. Had he been receiving good time credits since his 1982 adult sentence, Lewis' release would be greatly accelerated. He asserts: "There are 1440 days, or approximately 3 years, 11 months, of good time credit at issue. This calculation is based on a 12–year sentence, since Lewis served 3 years of his 15–year YCA sentence prior to October 21, 1982. Pursuant to 18 U.S.C. § 4161, an inmate receives 10 days per month good time credit if his sentence is 10 years or more." Supplemental Brief for Appellant, at 15 n. 3.

18 U.S.C. § 4161 (Supp.1988) (repealed 1984).[9] Good time credits are allowed for "[e]ach prisoner convicted of an offense against the United States and confined in a penal or correctional institution *for a definite term* other than for life." *Id.* (emphasis added). Because youth offenders sentenced pursuant to 18 U.S.C. § 5010 are sentenced to the custody of the Attorney General for treatment and supervision until discharged as provided by 18 U.S.C. § 5017, such sentences are for an indefinite term. Thus, the good time provisions generally do not apply to YCA offenders. *See Staudmier v. United States,* 496 F.2d 1191, 1192, (10th Cir.1974) (per curiam).

In *Ralston v. Robinson,* 454 U.S. 201, 102 S.Ct. 233, 70 L.Ed.2d 345 (1981), the Supreme Court held that, where a prisoner serving a sentence under the YCA is convicted of another crime while serving the original sentence, the "judge who sentences [the] youth offender to a consecutive adult term may require that the offender also serve the remainder of his youth sentence as an adult." *Id.* at 217, 102 S.Ct. at 243. The Court also stated that the sentencing judge in such a case should make an explicit finding that the youth would no longer benefit from youth status during the remainder of the youth sentence. *Id.* at 218–19, 102 S.Ct. at 244. The Supreme Court has not addressed whether a prisoner in this situation is entitled to receive good time credits. This issue has been addressed, however, in two cases decided by the United States Court of Appeals for the Tenth Circuit. That court ordered an award of good time credits in *Johnson v. Rodgers,* 756 F.2d 79 (10th Cir. 1985), but denied credits in *Scott v. United States,* 778 F.2d 1444 (10th Cir.1985) (per

curiam). We look to these cases for guidance.

In *Johnson,* the petitioner was serving a zero-to-six year sentence under the YCA, where the comparable sentence for an adult who commits the same offense was a three-year maximum. While serving this sentence, the petitioner witnessed a prison assault and was placed in administrative detention for his own safety. The district court found that while he was in protective custody, he could not participate in the minimum required YCA rehabilitative programs. 756 F.2d at 81. The court summarized the petitioner's situation and concluded as follows:

> [Petitioner] lacked the rehabilitative benefits of the YCA, yet he was serving a longer sentence than would an adult, and without the incentive of early release based on good-time credit that an adult would enjoy. In view of the clear congressional intent expressed in the YCA, the conditions of petitioner's incarceration were legally unacceptable.

*Id.* Additionally, the court rejected the government's argument that the prisoner himself was somehow responsible for his predicament. The court stated that if the prison administration could not fulfill its duty under the YCA to provide rehabilitative programs, it should have taken remedial action by granting good time credits. *Id.*[10]

In *Scott v. United States,* 778 F.2d 1444 (10th Cir.1985) (per curiam), decided shortly after *Johnson,* the court faced the issue of whether an offender sentenced under the YCA who violated the terms of his parole should receive good time credits for time served in a facility which failed to separate him from adult inmates. The petitioner

---

**9.** Although the chapter dealing with good time credits was repealed on October 12, 1984, its provisions remain in force for five years after the date of repeal, with regard to individuals who committed the offense prior to November 1, 1987. *See* note preceding 18 U.S.C. § 4201 (Supp.1988) (repealed 1984). Because Lewis' offense for which he was sentenced as an adult occurred in 1982, and five years have not passed since the date of repeal, the statutory good time provisions are relevant to our analysis of this issue.

**10.** In the same paragraph, the court hinted at the equitable aspects of this issue, which would come to the fore in *Scott v. United States,* 778 F.2d 1444 (10th Cir.1985): "[S]ince petitioner was not accorded the rehabilitative opportunities that were the *quid pro quo* for his longer sentence, he is entitled, in equity and conscience, to the good-time credit he would have earned had he been serving an adult sentence." 756 F.2d at 81.

was originally sentenced under the YCA for a zero-to-six year term for burglary, but was paroled two years later. While incarcerated, however, he was not segregated from adult prisoners.[11] While out on parole, he was convicted of another burglary, and he misrepresented his conviction at a subsequent parole revocation hearing. His parole was revoked and he was reincarcerated to serve the remainder of his sentence. *Id.* at 1445–46. He apparently raised the issue of the pre-parole YCA violation only *after* his reincarceration.

Initially, the *Scott* court recognized that it had allowed good time credits in similar circumstances in *Johnson.* The court denied relief, however, stating:

> [W]e agree with the district court's conclusion that the appellant is not entitled to good time credits for being incarcerated with adult inmates. As recognized in *Johnson v. Rodgers,* the allowance of good time credits in such circumstances is an equitable remedy and as such should only be granted where "in equity and conscience" the petitioner is so entitled. The district court's conclusion that the equities did not favor the granting of such relief in light of the appellant's burglary conviction subsequent to his parole is consistent with the conclusions of other courts confronted with parole violators seeking similar relief. Although the district court did grant good time credits for a failure to segregate YCA offenders from adult inmates, such relief was not accorded offenders who had violated the terms of their parole. Similarly, in *Hernandez v. Rogers,* No. 84–2353 (Order and Judgment) (10th Cir. July 24, 1985), this court affirmed the denial of good time credits on the ground that petitioner's violation of the terms of his parole prevented the award of equitable relief.

*Id.* at 1446 (citation omitted). Thus, language at the end of the *Scott* opinion appears to limit the reach of the court's holding specifically to cases where the offender has violated his *parole* and therefore cannot fairly look to the court for equitable relief.

The district court in the instant case determined that Lewis' situation was more akin to *Scott* than *Johnson,* in that Lewis was denied good time credits because it was his own misbehavior which led to his 1982 conviction and sentencing as an adult. Therefore, the court concluded, equity did not justify awarding Lewis good time credits. App. at 239. In addition, the court determined that it simply was not authorized under YCA to award good time credits:

> However, regardless of the equities, this court will not exercise its equitable powers, assuming it has such powers in this circumstance, and grant to the petitioner that which the statute does not provide. Petitioner is serving a YCA sentence. The YCA does not provide petitioner with eligibility to earn good time credits. The statute does not make provision for a situation like the one at bar, nor, as is evident from the legislative history, did Congress contemplate such a situation. *Thompson v. Carlson,* 624 F.2d 415, 420 (3d Cir.1980). The court will not fill-in the interstices of the statute. Therefore, the petition will be denied.

*Id.* at 239–40.

Initially, we do not agree with the district court that, because the YCA does not specifically provide for good time credits, we are powerless to grant such an award. In deciding a similarly novel issue—whether a prisoner consecutively sentenced as an adult while serving a YCA sentence could be returned to the general prison popula-

---

11. The court stated:

Until his parole in March of 1981, the appellant was incarcerated at the Federal Correctional Institution at Lompoc, California which did not segregate YCA offenders from adult inmates, thereby depriving the appellant of the benefits intended under the YCA. Also in 1981, this court ruled that the Bureau of Prisons could not incarcerate offenders sentenced under the YCA in institutions which do not segregate such offenders from adult inmates and remain in compliance with the mandate of the Youth Corrections Act. *Watts v. Hadden,* 651 F.2d 1354, 1366 (10th Cir. [1981]). Since *Watts v. Hadden* the appellant has not been incarcerated with adult inmates in violation of the YCA.

778 F.2d at 1445.

tion for the remainder of his YCA sentence—this Court stated: "It is ... apparent that the issue presented by this factual situation was not in the contemplation of Congress when it enacted the YCA, and that, however we rule, we will be required to fill in the interstices of the statute." *Thompson v. Carlson,* 624 F.2d at 419. We proceeded to do just that, holding that the prisoner need not be segregated while serving the remainder of his first sentence under the YCA.[12] We did so despite the fact that nothing in the YCA addressed the effect of a subsequent adult sentence imposed during service of a YCA sentence. Thus, while this is a difficult issue on which little guidance exists, we are not as hesitant as the district court to fill in the interstices of the statute, where good reason exists to do so.

▮ Neither the statute providing for good time credit nor the YCA address this problem. We cannot believe, however, that had Congress considered the problem, it would accept the unfairness resulting when a prisoner is, in effect, caught between the two statutes and denied the benefits of either. As the court in *Johnson* noted, the purpose of the YCA is rehabilitation, and the indicator for early release under the YCA is not the sentence reduced by good time but rather the offender's progress toward rehabilitation. 756 F.2d at 80. In light of this, once rehabilitation is abandoned both as a statutory goal and as a measure of early release, the incarceration effectuates a different purpose and similar-

ly should have some other measure of early release.

Nor do we think that to grant good time credits under the circumstances of this case does violence to the YCA. We agree with the view that, under the YCA scheme, rehabilitation "may be regarded as a quid pro quo for a longer confinement." *Johnson v. Rodgers,* 756 F.2d at 80 (quoting *Carter v. United States,* 306 F.2d 283, 285 (D.C.Cir.1962)).[13] When the youth offender is housed with adult prisoners, a critical aspect of the rehabilitative program is lost, and the award of good time credits to reduce the sentence is appropriate.

Thus we agree with the *Johnson* court that if a petitioner is denied significant rehabilitative benefits—here, segregation—afforded by the YCA, and is also denied the good time credits which would reduce his sentence, the terms of his imprisonment are "legally unacceptable." *Id.* at 81. We think that awarding good time credits as a fallback measure of early release when rehabilitation is abandoned is the most reasonable way to reconcile the YCA and the good time credits statute. This remedy supports the goals of both statutes and also leads to a fair result for prisoners in this situation. Of course, a prisoner who receives good time credits following a *Ralston* determination no longer retains any YCA benefits but is entitled only to the rights and privileges of an inmate serving an adult sentence.[14]

We acknowledge that the Court of Appeals for the Tenth Circuit came to a differ-

---

**12.** The *Thompson* decision was issued prior to the *Ralston* decision in which the Supreme Court resolved a split among the circuits in favor of the *Thompson* view. *See* 454 U.S. at 203 & n. 1, 102 S.Ct. at 236 & n. 1.

**13.** In this case, unlike *Johnson* and *Scott,* where the defendants were sentenced pursuant to 18 U.S.C. § 5010(b), Lewis was sentenced pursuant to § 5010(c) and thus he could have received the same sentence had he been an adult. *See supra,* n. 6. Nonetheless, all YCA offenders, including those sentenced pursuant to § 5010(c), remain subject to longer confinement in the sense that their sentences do not contemplate eligibility for good time credits.

**14.** Appellees seek to resolve this issue on a formalistic basis, arguing that Lewis' sentence after 1982 was still a "YCA sentence" and had not been transformed into an "adult sentence". For

example, they cite a portion of *Ralston* in which the Court discussed the effect of a "no benefit" finding on "the remainder of an unexpired YCA sentence...." Brief of Appellees, at 12 (citing *Ralston,* 454 U.S. at 213, 102 S.Ct. at 241). From this, appellees imply that because the Court referred to the unexpired sentence as a "YCA sentence", then the sentence could not be considered transformed into an adult sentence, and therefore it could not merit the award of good time credits.

The above argument may easily work against appellees, however, because later in the *Ralston* opinion the Court stated that "in several circumstances, the YCA permits a youth offender initially sentenced under the YCA to be treated as an adult *for what would otherwise be the remainder of the YCA sentence.*" 454 U.S. at 215, 102 S.Ct. at 242 (emphasis added) (footnote omitted). Thus, the Supreme Court's character-

ent conclusion in *Scott*, but we disagree with the court's reasoning in that case.[15] The statute allowing good time credits does not preclude the award of such credits to an offender originally sentenced *as an adult* and later incarcerated pursuant to a parole violation. A prisoner in that situation would be entitled to good time credits, assuming he has followed prison rules while incarcerated. *See* 18 U.S.C. § 4161. It is difficult to see, then, why an offender initially sentenced *under the YCA* who later violates parole should be treated differently than someone sentenced as an adult who later violates parole. If good time credits are awarded in the latter situation then they should also be awarded in the former.[16]

For the above reasons, we hold that Lewis is entitled to good time credits for the time he has been incarcerated with adults from the time of the 1982 finding that he would no longer benefit from the YCA.[17]

### B.

Lewis also argues that he is entitled to good time credits for periods before his adult sentence during which he allegedly was not segregated from adult prisoners. Specifically, he seeks good time credits "for the period of October 26, 1979, through April, 1982, when the Federal Correctional Institution at Petersburg, Virginia, was converted to a YCA facility." Supplemental Brief for Appellant, at 12–13. Appellees assert, however, that Lewis never presented this claim before the district court in his habeas petition and that we therefore should not consider it on appeal. Brief of Appellees, at 9–10.

Although this issue is not free from doubt, our analysis of Lewis' habeas petition and accompanying brief, as well as the posture of this case, indicates that the nonsegregation issue *was* raised below. Although Lewis' habeas petition itself mentions only the transformation issue, his brief in support of the petition presents the nonsegregation issue. That brief alleges YCA violations based on nonsegregation prior to his adult sentence in 1982, and it alleges facts underlying the nonsegregation argument.[18]

We recognize that the nonsegregation argument appeared in the "Statement of

---

ization is ambiguous, at best, and we cannot glean any guidance from *Ralston* on this substantive issue, which was not then before the Court. Deciding this issue based on whether Lewis' sentence is labelled a "YCA sentence" or an "adult sentence" is merely an exercise in semantics.

For similar reasons, we reject the district court's distinction, also based on *Ralston*, between the "treatment" of an inmate and the "nature" of the sentence itself. *See* app. at 237.

15. We could distinguish *Scott* from the instant case on the basis that the court in *Scott* denied good time credits specifically because the petitioner had violated the terms of his parole, and that in this case Lewis was not a parole violator. The *Scott* decision, fairly read, may be limited to cases involving violation of parole. *See* discussion, *supra*. However, to the extent that Lewis was similarly denied YCA benefits as a result of his own conduct, he is in substantially the same position, from an equitable perspective, as the parole violator in *Scott*. Thus, we do not find this distinction to be useful.

16. Moreover, we decide this issue as legal matter rather than as an equitable one. We are analyzing the YCA and the good time credits statute in order to find what we consider to be the most reasonable interrelation of both.

Thus, that Lewis himself is to blame for his second sentence, and thus his present incarceration as an adult, is not sufficient to prevent the award of good time credits to him, given our legal analysis.

17. For purposes of calculating the accrual of good time credits, the relevant date is October 21, 1982, the date of the 1982 adult sentencing.

18. In the section of the habeas brief entitled "Statement of Case," Lewis stated:

On February 1, 1980, (through and including 1981,) Mr. Lewis was confined at the Memphis F.C.I., where he was confined in violation of the YCA mandates, with adults at that facility, throughout this period.

However, on October—1981, through and including December—1981, he was confined at the El Reno F.C.I. facility, where again Mr. Lewis was confined in violation of the YCA mandates, with adults of that facility throughout this period.

On December—1981, through and including December 17, 1982, Mr. Lewis was confined at the Petersburg F.C.I., Virginia facility. He was confined at this facility, with adults, *before the facility was changed over to a YCA facility in April—1982*. Therefore, from December—1981, through and including April—

Case" section of the brief and was not included as a separate "Question Presented" or as an issue in the "Argument" section. While we may have appreciated a clearer delineation of the nonsegregation argument as a distinct issue, we nonetheless determine that the issue was fairly raised in the habeas petition below.

Our determination is supported not only by our review of the habeas petition and supporting brief, but also by the recognition that Lewis was proceeding *pro se* during all stages of the habeas proceedings before the district court.[19] Fed.R.Civ.P. 8(f) states that "[a]ll pleadings shall be so construed as to do substantial justice." Consistent with this rule is the well-established principle that a pro se prisoner's pleadings should be subject to less stringent standards of specificity and their complaints should be construed liberally. *See, e.g., Micklus v. Carlson,* 632 F.2d 227, 236 (3d Cir.1980); *United States ex rel. Walker v. Fayette County,* 599 F.2d 573, 575 (3d Cir.1979).[20]

Although Lewis raised the nonsegregation issue below, our review of the district court's opinion clearly indicates that the court did not reach Lewis' nonsegregation argument, but decided only the transforma-

tion issue. *See* memorandum opinion, app. at 236–40. Nor did the court make any findings as to whether Lewis actually was denied segregation from adult prisoners prior to his 1982 adult sentence. Because of our disposition of this issue below, however, it is not necessary to remand this matter to the district court for fact-finding.

We will assume for purposes of our analysis that Lewis was indeed housed with adults at various times from 1979 through 1982, in violation of the YCA. Under the applicable statute, good time credits may only be awarded to prisoners incarcerated "for a definite term." 18 U.S.C. § 4161. During the time of the alleged incidents (prior to the 1982 *Ralston* determination), however, Lewis was serving a YCA sentence, which is *not* for a definite term. *See* 18 U.S.C. § 5010(c) (the YCA section under which Lewis was sentenced in 1979); *Staudmier v. United States,* 496 F.2d 1191, 1192 (10th Cir.1974) (per curiam) (because YCA sentences are for an indefinite term, good time credits are generally not applicable to YCA offenders). Thus, the statute does not authorize the award of good time credits in this instance. Because a legal remedy is precluded, we would have to exercise our equitable powers if we were

---

1982, (or at least until April—1982) Mr. Lewis was being held in violation of the YCA mandate because of this confinement. App. at 25 (emphasis in original).

The district court asked the parties to submit briefs on the issues and holdings in *Scott v. United States,* 778 F.2d 1444 (10th Cir.1985), and *Johnson v. Rodgers,* 756 F.2d 79 (10th Cir.1985). In his "Statement of Case" in his brief in response to that request, Lewis repeated the allegations made in his brief supporting the habeas petition. He also added some specific dates where these had been left out in the first brief, and he added an allegation that he had not been segregated from adult prisoners, in violation of the YCA, during the period of October 1979 through January 1980, as well as during the periods listed in the first brief. *See* app. at 175–76. In both briefs before the district court, Lewis demonstrated some confusion and inconsistency as to the exact periods of the alleged YCA violations. Nonetheless, it cannot be disputed that the nonsegregation argument was contained in Lewis' briefs.

**19.** On November 29, 1988, counsel for Lewis was appointed.

**20.** Regarding the liberal construction of pro se pleadings, one authoritative source has commented:

The federal rules do not adhere to the ancient principle that a pleading must be construed most strongly against the pleader. Nor do the federal courts require technical exactness or draw refined inferences against the pleader; rather they make a determined effort to understand what he is attempting to set forth and to construe the pleading in his favor, whenever justice so requires. This is particularly true when a court is dealing with a complaint drawn by a layman unskilled in the law. In these cases, technical deficiencies in the complaint will be treated leniently and the entire pleading will be scrutinized to determine if any legally cognizable claim can be found within it.

A pleading will be judged by its substance rather than according to its form or label and, if possible, will be construed to give effect to all its averments.

5 C. Wright & A. Miller, Federal Practice and Procedure § 1286, at 381–84 (1969) (footnotes omitted). We find the above discussion most appropriate in this case.

to order an award of good time credits for these violations.[21]

While we can envision situations similar to this one where a prisoner would deserve the equitable award of good time credits, we believe that Lewis' own conduct in this case precludes our granting him such a remedy. A petitioner in equity must come to the court with "clean hands," and the petitioner's wrongful or illegal conduct may dissuade a court from granting equitable relief on an otherwise meritorious claim. *See, e.g., Faustin v. Lewis,* 85 N.J. 507, 511, 427 A.2d 1105, 1107 (N.J.1981). In 1982, Lewis was found guilty and sentenced for assaulting a prison guard while in federal custody, in violation of 18 U.S.C. § 113(d).

We recognize that the assault occurred after the alleged YCA violations at issue. Ordinarily the wrong invoked under the clean hands maxim to defeat a suit must stand in direct and immediate relation to the equity which the petitioner seeks to enforce. *See, e.g., Stauffer v. Stauffer,* 465 Pa. 558, 575, 351 A.2d 236, 244 (Pa. 1976); *Untermann v. Untermann,* 19 N.J. 507, 517–18, 117 A.2d 599, 604 (N.J.1955); DeFuniak, Handbook on Modern Equity, at Sec. 24, p. 39 (1956) (petitioner may not receive equitable relief if he has been guilty of any inequitable or wrongful conduct with respect to the "transaction or subject matter sued on"). Nonetheless, we believe that Lewis is not entitled to equitable relief in this case, for two reasons.

First, Lewis' misconduct led to his 1982 sentence as an adult and thus is related to our decision to award good time credits for post-*Ralston* determination YCA violations —a matter which is part of this litigation. Therefore, although Lewis' misconduct did not create the situation for which he seeks

equity, his misconduct does affect the equitable relations between the parties on a matter before this court.

Second, although the instant habeas corpus petition is a civil matter, the underlying criminal law issues involve policy concerns which color our discretionary application of the clean hands doctrine in a different light than if the doctrine had arisen in the more typical business or tort law context. Specifically, Lewis' misconduct in this case implicates important public policy considerations of maintaining prison security and safety, and of avoiding the rewarding of prisoners who violate the law and prison rules and endanger prison personnel.

On these facts, we decline to exercise our equitable powers to order an award of good time credits for YCA violations which may have occurred from 1979 through 1982. Our decision is consistent with *Scott v. United States,* 778 F.2d 1444 (10th Cir. 1985) (per curiam), discussed *supra,* where the court declined to grant good time credits to a YCA prisoner who had violated his parole after the alleged YCA violations. Lewis has committed a substantial wrong, against both the Appellees and the public, and this wrong is sufficiently related to this litigation to bar Lewis from equitable relief in this case.[22]

## IV.

For the reasons discussed above, we will reverse the order of the district court denying Lewis' petition for writ of habeas corpus and his motion for summary judgment. We will remand this case to the district court with instructions to enter an order granting Lewis good time credits calculated from October 21, 1982, the date on which Lewis was sentenced as an adult.

21. By contrast our award of good time credits for the post-*Ralston* determination "transformation" was a legal determination, *see supra* n. 16, because at that point Lewis' sentence became definite.

22. We noted above that we could conceive of cases where a prisoner who had "clean hands" would deserve an equitable remedy of good time credits. We would limit this comment to cases similar to the instant case, where the prisoner seeking good time credits for time served in conditions violative of the YCA is presently serving an *adult* sentence, and thus has a definite time for release. We do not address the problem of whether or in what manner good time credits might be applied to reduce a YCA sentence for which rehabilitation, rather than a specific advance date, remains the time of release.

STAPLETON, Circuit Judge, Concurring.

I join in the court's holding that Lewis is entitled to good time credit earned after the district court's 1982 finding that he could not benefit from YCA treatment during service of the remainder of his original YCA sentence. I further join in the court's holding that Lewis is entitled to no relief with respect to the period preceding that finding. I write separately to record my disagreement with the suggestion of the majority and of the Court of Appeals for the Tenth Circuit in the *Scott* and *Johnson* cases that a failure on the part of the Bureau of Prisons to honor its statutory mandate regarding segregation and rehabilitation for youthful offenders may alone provide justification for materially altering the terms and conditions of a validly imposed sentence. I would deny relief to Lewis with respect to the period preceding the 1982 sentencing even if he had come to us with "clean hands" and had been able to show that the Bureau of Prisons, during that period, elected not to live up to its duty to provide segregation from adult inmates.

In *Ralston v. Robinson,* 454 U.S. 201, 102 S.Ct. 233, 70 L.Ed.2d 345 (1981), the respondent Robinson had originally been sentenced to a ten-year term of imprisonment under the YCA. Before completing the service of that sentence, he was convicted of assaulting a federal officer and was sentenced to an additional 66 months of incarceration to run consecutive to the YCA sentence. The second sentencing judge found that the respondent would derive no further benefit from treatment under the provisions of the YCA and declined to sentence under that Act. After this second sentence, the Bureau of Prisons classified Robinson as an adult offender pursuant to a written policy that limited the definition of a "YCA inmate" to any inmate sentenced under the YCA "who is not also sentenced to a concurrent or consecutive adult term, whether state or federal." 454 U.S. at 205; 102 S.Ct. at 237; 70 L.Ed.2d 345.

Robinson filed a petition for a writ of habeas corpus contending that he should be treated as a YCA inmate throughout the remainder of his YCA sentence. As a first line of defense, Robinson's custodian, Ralston, asserted that the YCA gives the Bureau of Prisons authority to determine that a YCA offender will not benefit from further YCA treatment. The Supreme Court rejected this "extraordinarily broad interpretation" of the YCA, as well as "any interpretation that would grant the Bureau independent authority to deny an offender the treatment and segregation from adults that a sentencing court mandates." 454 U.S. at 211; 102 S.Ct. at 240; 70 L.Ed.2d 345.

As a second line of defense, Ralston argued that the YCA implicitly authorizes a second sentencing court to make a determination that the defendant will receive no benefit from YCA treatment during the remainder of the original sentence and that once such a determination has been made, the Bureau no longer has a duty to provide the treatment and segregation required by the YCA. The Supreme Court concluded that while "Congress apparently did not consider this specific problem," the "history and structure of the YCA ... demonstrate Congress' intent that a court—but not prison officials—may require a youth offender to serve the remainder of a YCA sentence as an adult after the offender has received a consecutive adult term." 454 U.S. at 214; 102 S.Ct. at 242; 70 L.Ed.2d. 345. Since the Court also concluded that the second sentencing judge had made a sufficiently clear finding that no benefit would be derived from YCA treatment during the remainder of the YCA sentence, it denied relief to Ralston.

In *Ralston,* the Supreme Court held only that one in Robinson's position need not be afforded YCA rehabilitative treatment and segregation. The issue of whether such an inmate is entitled to good time credit was not before the Court. However, the approach utilized by the Court in *Ralston* leads me to the conclusion that an inmate in this position is entitled to good time credit following a judicial determination of "no further benefit."

Since Congress did not think about the situation in which an inmate serving a YCA sentence is subsequently convicted of another crime, it had no specific intent with respect to whether good time credit should be granted following a "no benefit" determination by the second sentencing judge. Accordingly, as in *Ralston*, the courts must fill this interstice using the history, structure, and purpose of the YCA and the good time statute as guides for determining what alternative Congress would have chosen had it foreseen this situation.

As the Court stressed in *Ralston*, the YCA adopts a two-track statutory scheme; a judge sentencing a youthful offender can elect to sentence him or her either under the YCA or under the applicable adult statute. If the latter alternative is chosen, all of the rules governing adult sentences, including those found in the good time statute, apply. The *Ralston* Court further found that if Congress had thought of the situation involving a second conviction, it would have wanted the second judge to be authorized to revisit the decision between the two tracks in light of changed circumstances. By the same token, when the second judge elects the second track and the youthful offender thereafter is treated as an adult inmate, I believe Congress would want good time credit to be awarded. Further, I believe that the rationale for awarding good time credits counsels in favor of making such an award. If the incentive for good behavior provided to all other inmates in an institution is denied to a former YCA inmate solely because of his or her prior status, one creates a potential threat to the institutional security and order that the good time statute was designed to promote.

Accordingly, I would hold that Lewis is entitled to adult good time credit from the time of his 1982 sentencing on the second offense.[1] My holding would be limited, however, to those situations in which a second sentencing judge exercises the statutory authority recognized in *Ralston* and makes a "no further benefit" determination. It follows that I would not award Lewis good time credit for any period before the 1982 sentencing even if he had not assaulted a prison guard and even if he were able to demonstrate that the Bureau of Prisons, during that period, elected not to live up to its duty to provide segregation from adult inmates. It would fly in the face of *Ralston* to hold that such a defalcation on the part of the Bureau would alone justify a district court, through an exercise of equitable discretion or otherwise, in transforming a sentence involving no good time credit into one that can be reduced by such credit.[2]

---

1. Both parties acknowledge that the second sentencing judge made a finding that Lewis would received no benefit from serving the remainder of this YCA sentence as a YCA inmate. Lewis litigated that issue in a post-conviction relief proceeding and lost. Supp.App. 46–48.

2. I agree with the majority that once Lewis seeks and is granted good time credit as an adult inmate, he will be an adult inmate for all purposes and will not be entitled to any benefit as a youthful offender under the YCA.