**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
June 10, 2009

Charles R. Fulbruge III
Clerk

No. 08-40281

GEORGE ESCAMILLA

Petitioner-Appellant

v.

T.C. OUTLAW, Warden, United States Penitentiary Beaumont, Texas

Respondent-Appellee

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 1:06-CV-81

Before JONES, Chief Judge, and HIGGINBOTHAM and HAYNES, Circuit Judges.

PER CURIAM:*

George Escamilla petitions for habeas, challenging the failure of authorities to credit his sentence with statutory and industrial good time under former 18 U.S.C. §§ 4161 and 4162. The district court determined that Escamilla is ineligible for these credits, which apply only to definite terms of years, because his sentence is for life, even though the Parole Commission has tentatively slated him for release on a date specific.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

I

Under former 21 U.S.C. § 841(b),[1] under which Escamilla was originally sentenced, certain drug offenders were required to serve a term of special parole on their release from prison.[2] Special parole differs from "regular" parole in that it is imposed by the sentencing court, it follows the completion of the primary sentence, which may include regular parole, and violators of special parole are subject to possible reincarceration for the entirety of the special parole term.[3]

In 1982, Escamilla pleaded guilty to a drug offense and was sentenced to ten years in prison and a special parole term of life. Upon release, Escamilla violated the terms of his special parole, and the Parole Commission revoked Escamilla's special parole term of life. A term of life imprisonment automatically took its place pursuant to former 21 U.S.C. § 841(c).[4] The Parole Commission, however, exercised its discretion to require Escamilla to serve only part of that life sentence, ordering him to serve a total of 250 months' imprisonment. Thus, while Escamilla's presumptive time in prison is currently set at 250 months, his life sentence remains intact and he is subject to further imprisonment at the Parole Commission's discretion.[5]

---

[1] The Sentencing Reform Act of 1984 and the Controlled Substances Penalties Amendments Act of 1984 altered the penalty scheme for federal drug offenders and, *inter alia*, deleted all references to special parole in the pre-1984 laws and replaced them with supervised release. *Gozlon-Peretz v. United States*, 498 U.S. 395, 399 (1991).

[2] *Escamilla v. Warden, FCI El Reno*, 2 F.3d 344, 345–46 (10th Cir. 1993). Escamilla pleaded guilty to aiding and abetting the distribution of four ounces of heroin in violation of 21 U.S.C. § 841(a)(1).

[3] *Id.*; *United States v. Bridges*, 760 F.2d 151, 153–54 (7th Cir. 1985). By contrast, "regular" parole means the Parole Commission has released an individual into the community before the end of his term of imprisonment. *Manso v. Fed. Det. Ctr.*, 182 F.3d 814, 816 (11th Cir. 1999).

[4] *Escamilla*, 196 F.3d at 1257; *Campos*, 120 F.3d at 50.

[5] Although Escamilla argues that he is actually serving a definite term of imprisonment under his original sentence, 10 years plus a special parole term of life, Escamilla's parole

At bottom, good time credits are meant to encourage inmates to comply with prison regulations.[6] Under the former version of 18 U.S.C. §§ 4161[7] and 4162[8] applicable here, a federal prisoner who is imprisoned for "a definite term other than for life" is entitled to earn good time credit, or, in other words, "a deduction from the term of his sentence."[9] The award of good time credits does not reduce the term of the original sentence, and conversely, the deprivation of credits does not add to the original sentence imposed for the prior offense. It simply requires the prisoner to serve a greater portion of the sentence in prison.[10]

At its core, Escamilla's argument reduces to three points: although he is subject to a life sentence, the Parole Commission has notified him that he is to serve only a portion of that life sentence; that portion is a "definite term"; and where § 4161 purports to bar good time credits from those serving "life sentences," it is only stating the unremarkable notion that good time credits are meaningless for prisoners serving life sentences. After all, imprisonment for life

---

violation resulted in the imposition of a life sentence. *Escamilla*, 196 F.3d at 1257.

[6] *United States v. Martin*, 100 F.3d 46, 48 (7th Cir. 1996).

[7] "Each prisoner convicted of an offense against the United States and confined in a penal or correction institution for a definite term other than for life . . . shall be entitled to a deduction from the term of his sentence . . . ." 18 U.S.C. § 4161 (repealed, effective Nov. 1, 1987).

[8] "A prisoner may, in the discretion of the Attorney General, be allowed a deduction from his sentence . . . for each month of actual employment in an industry or camp . . . . Such allowance shall be in addition to commutation of time for good conduct, and under the same terms and conditions and without regard to length of sentence." 18 U.S.C. § 4162 (repealed, effective Nov. 1, 1987). Although § 4162 does not contain the "for a definite term other than life" language, no case has examined this issue separately for § 4162, Escamilla's claims cabin statutory and industrial credits together, and, in any event, one cannot subtract time from an indefinite sentence. Thus, if we were to examine § 4162 separately from § 4161, we would arrive at the same conclusion.

[9] 18 U.S.C. §4161. The Sentencing Reform Act of 1984 repealed 18 U.S.C. §§ 4161 and 4162, effective Nov. 1, 1987, for offenses committed after that date.

[10] *United States v. Newby*, 11 F.3d 1143, 1148 (3d Cir. 1993).

supplies no fixed term from which to deduct good time credits.[11]  In the case of definite sentences, on the other hand, a new release date is easily calculated: the prisoner's sentence less any credit for good conduct.  Escamilla urges that his presumptive prison time of 250 months supplies a fixed and definite term from which to deduct his good time credit.

This argument fails to convince.  As the district court explained, Escamilla's sentence remains life in prison.  His current presumptive parole date of April 12, 2011 was set at the discretion of the Parole Commission.  The Commission may change its determination at any time up until Escamilla's release, and thus the 250-month presumptive time of service is not a "term" at all, let alone a "sentence," as Escamilla now argues.[12]

An unpublished opinion from the Eighth Circuit supports this view.[13]  In *Venetucci v. Reese,* the court, noting the considerable discretion of the Parole

---

[11] *Cf. Glascoe v. United States*, 358 F.3d 967, 970 (D.C. Cir. 2004) (construing a District of Columbia good time credits provision to exclude life sentences because "[i]t would be meaningless for prison authorities to award a prisoner serving a life sentence 10 days of good time credit each month, unless there is a reduction in the time he must serve. . . . [I]mprisonment for life supplies no fixed term from which to deduct good time credits; the length of the sentence is indefinite."); *United States v. Jolivet*, 267 Fed. Appx 736, 738–39 (10th Cir. 2008) (unpublished).  Some state schemes allow for good time deductions from calculated life expectancies, but Escamilla argues that his good time credits should be subtracted from the 250-month portion of his life sentence that he is currently serving.

[12] At least one court has allowed the use of good time credits in a case involving a definite special parole term.  In the Seventh Circuit case *Evans v. United States Parole Commission*, the petitioner violated the terms of his release during his four-year special parole term.  The Parole Commission then ordered petitioner to serve fourteen months, but allowed him two months' credit for good time.  78 F.3d 262.  The fourteen months, like the 250 months in Escamilla's case, did not guarantee release at any particular time yet the prisoner in Evans received good time credit anyway.  And the good times credits were deducted from the time of prison service, not the sentence, providing some indication that the operable "term" for purposes of determining whether good times credits apply is the length of the prison time, not the length of sentence.  But these facts were only mentioned in passing and were of no importance to the issues presented.  Unlike the prisoner in *Evans*, Escamilla is serving a life sentence.  Without more, Escamilla cannot connect the analogy to *Evans* to the relief he seeks.

[13] While unpublished opinions are not binding precedent, they may be persuasive on the legal issues, and are cited in the interest of maintaining consistency across the spectrum of federal law.

Commission and the plain language of § 4161, determined that good time credit could not alter the presumptive parole date set by the Parole Commission of a prisoner serving a life sentence.[14]

We agree. The Parole Commission maintains discretion over Escamilla's sentence until his release. Judicial imposition of good time credit in Escamilla's case would disregard this discretion, as well as the plain language of 18 U.S.C. § 4161, which restricts the use of good time credits to "definite term[s] other than for life." The district court's order is AFFIRMED.

---

[14] 46 Fed. App'x 381, 382 (8th Cir. 2002) (unpublished). Further support is found in a line of cases dealing with the Youth Corrections Act (YCA). To advance its goal of rehabilitation, the now defunct YCA allowed for indeterminate sentences, during which offenders were in the Attorney General's custody for treatment and supervision. Like the Parole Commission's continued discretion over Escamilla's release date, a YCA offender's time of release was based on a determination that the offender had "acquired the stability and redirection to overcome the past and begin life anew." *Johnson v. Rodgers*, 756 F.2d 79, 80 (10th Cir. 1985). It was thus possible for a YCA offender to be confined longer than his enumerated sentence. *See, e.g, Kotz v. United States*, 353 F.2d 312 (8th Cir. 1965); *Young Hee Choy v. United States*, 322 F.2d 64 (9th Cir. 1963). At base, a sentence of three to five years meant only that the offender would serve a minimum of three years, remaining in detention until rehabilitation. Courts have consistently characterized YCA sentences as "indefinite," thus making YCA offenders ineligible for good time credit under the same 18 U.S.C. § 4161 at issue in Escamilla's case. *Lewis v. Attorney General of United States*, 878 F.2d 714, 716 (3d Cir. 1989); *Johnson*, 756 F.2d at 80; *Staudmier v. United States*, 496 F.2d 1191, 1192 (10th Cir. 1974).